DAVIS vs. THE CHICAGO & NORTHWESTERN RAILWAY COM-
PANY.

*October 31 — November 20, 1883.*

RAILROADS: NEGLIGENCE. *(1) Care due to licensee on right of way.*
*(2) Acquiescence in travel on right of way. (3) Court and jury.*

1. If the right of way of a railroad company has been constantly used
by the public for purposes of travel on foot, with its knowledge
and acquiescence, a person so using the same is not a mere tres-
passer, but is a licensee, and the company will be liable for an
injury to him caused by the negligent act *or omission* of its serv-
ants. The statute (R. S., sec. 1811) making it an offense to walk
upon the track of a railroad does not alter the rule.

2. From the constant use of the right of way of a railroad company
for purposes of travel, daily for twenty years or more, without
objection, a jury would be justified in finding that such use was
with the *acquiescence* of the company.

3. Whether, in this case, it was negligence on the part of the servants
of the defendant to leave a steam boiler and engine upon its track
unattended, and whether the explosion which caused the plaintiff's
injury was the result of such lack of attention, were questions to
be determined by the jury.

APPEAL from the Circuit Court for *Jefferson* County.

The facts are stated in the opinion. At the close of the
testimony the court directed a verdict for the defendant, and
from the judgment entered thereon the plaintiff appealed.

For the appellant there was a brief by *Wm. H. Rogers*
and *I. W. & G. W. Bird,* and oral argument by *Mr. G. W.
Bird.*

*Wm. F. Vilas,* for the respondent, to the point that as the
plaintiff was at most a licensee, the company owed to him
no specific duty of watchfulness and care, cited, besides the
cases cited in the opinion: *McAlpin v. Powell,* 70 N. Y.,
126; *Gillespie v. McGowan,* 100 Pa. St., 144; *Morgan v. Pa.
R. R. Co.,* 7 Fed. Rep., 78; *Lary v. C., C., C. & I. R. R.
Co.,* 78 Ind., 323; *Bush v. Brainard,* 1 Cow., 78; *P., F. W.
& C. R'y Co. v. Bingham,* 29 Ohio St., 364; *Durham v.*

*Musselman*, 2 Blackf., 96; *Knight v. Abert*, 6 Pa. St., 472; *Burdick v. Cheadle*, 26 Ohio St., 393; *Pierce v. Whitcomb*, 48 Vt., 127; *Southcote v. Stanley*, 1 Hurls. & N., 247; *Bolch v. Smith*, 7 id., 736; *Hardcastle v. S. Y. R'y & R. D. Co.*, 4 id., 67; *Blyth v. Topham*, Cro. Jac., 158; *Jordin v. Crump*, 8 Mees. & W., 782; *Lygo v. Newbold*, 9 Exch., 302; *Binks v. S. Y. R'y & R. D. Co.*, 32 L. J., Q. B., 26; *Ilott v. Wilkes*, 3 Barn. & Ald., 304; *Mangan v. Atterton*, L. R., 1 Exch., 239; *Wilkinson v. Fairrie*, 1 Hurls. & Colt., 633; *Blackmore v. Toronto St. R'y Co.*, 38 Up. Can. (Q. B.), 172; *Collis v. Selden*, L. R., 3 C. P., 495.

TAYLOR, J. The plaintiff brought this action to recover damages resulting to him from the explosion of a steam boiler of the defendant company. The steam boiler which exploded and caused the injury was used for working a pile-driver, and at the time was on a flat car on a side track on the right hand of the main line going north from the depot in the city of Fort Atkinson. About thirty-five minutes before the explosion took place, the men in charge of the steam boiler and pile-driver left the same and went into the city to take their dinners. During this thirty-five minutes none of the employees of the defendant were in charge of the pile-driver or steam boiler. When the employees in charge left, there was a strong fire in the fire-box, and, as the proof tends to show, plenty of water in the boiler, and according to the evidence of the engineer in charge the safety-valve was set so as to blow off steam at 110 pounds pressure. The cause of the explosion was not very clearly shown on the trial, but there was evidence which strongly tended to show that the boiler was either originally made of brittle and imperfect iron, or that it had become so by use, and that the steam did not blow off under a pressure of 120 pounds, which all admit was a dangerous pressure.

Upon the trial, and after all the evidence was in, the cir-

cuit judge directed a verdict for the defendant. This verdict was directed, as is stated by the learned counsel for the defendant, "upon the simple ground that the alleged negligence, which the plaintiff claimed the defendant was answerable for, was not a breach of any duty which the defendant owed to the plaintiff in the position in which the plaintiff had placed himself. The simple fact is that the plaintiff went upon the ground of the defendant uninvited, and in pursuit of his own personal ends, and was there injured by the accidental explosion of a boiler belonging to the defendant and rightfully being where it was."

The location of the place where the accident took place is fully described in the bill of exceptions, and is briefly as follows: The defendant's track runs nearly north and south through the city of Fort Atkinson, and crosses the Rock river on a bridge running in the same direction. The depot is south of the bridge about 800 feet. It is claimed by the plaintiff that there are two public streets which cross the line of the railroad track, east and west, north of the depot and south of the bridge. The first street north of the depot is Milwaukee street. About the existence of this street there is no contention. North of Milwaukee street and south of the river, the plaintiff claims there is a public street, crossing the defendant's track in an east and west direction, called South Water street. The defendant denies that this street crosses the track, but admits that it is an open public street east of the track. The plaintiff claims that there is also a public street running north from South Water street to the river, and that the defendant's track crosses this street in a northeasterly direction. The place where the pile-driver stood when the boiler exploded was within the limits of what the plaintiff claims is South Water street; and if the street is a public street its entire width across the track, there is no doubt but that the pile-driver stood in that street. The plaintiff was about fifty feet north

of the pile-driver and 500 feet north of the depot when the explosion took place; and counsel for the plaintiff claims that he was within the limits of the street he calls Lumber street.

The evidence shows that the right of way of .the defendant was fenced on both sides thereof, from what is claimed to be the north side of South Water street to the river, and on the west side again from the south side of what is claimed to be South Water street in a southerly direction, leaving a space between the ends of the fence on the west side about the width of South Water street. For a considerable distance north of the south line of what is called South Water street, the right of way was filled with lumber piles on the east side and cord-wood on the west side, leaving only room for two railroad tracks. The west track was the main track and the east one the side track, on which the pile-driver stood when the explosion took place. The lumber piles on the east side of the track extend across what is claimed to be South Water street, except an opening of about eighteen feet near the south side of the line of said street. The defendant claims that this opening was a private crossing used by Wilcox, the owner of the lumber-yard, and was known as Wilcox crossing, and was not a public street in any sense; at all events, not exceeding in width the eighteen feet which he designates as Wilcox crossing. Wilcox's lumber and timber piles extend north, along the east side of the right of way, to within fifty feet the river, occupying a great portion of the east part of the respondent's right of way. On the west side Wilcox's wood piles occupied the west part of the right of way about forty or fifty feet north of the crossing.

The plaintiff claims that for twenty years or more — in fact, ever since the company built its bridge across the river — the public have constantly used the bridge to cross from the north to the south side of the river, and *vice versa*, and the right of way of the railroad south of the river, as

far south as Milwaukee street, as a traveled way from the bridge south to reach South Water and Milwaukee streets; that the place where the people traveled was between the side track and the main track; and that the defendant had full knowledge of the fact that such right of way had been and was so constantly used for foot travel; and that no protest or objection had been made by said company to the use of its right of way for that purpose.

The evidence also shows that the day before the accident happened the defendant was repairing the bridge, and the trains from the north did not cross the bridge; the passengers and baggage were transferred across the bridge on a hand car, or passed the bridge on foot, to the train on the south side of the river; that on the day the accident happened the train stopped for a few minutes on the north side, but finally passed over the bridge; that some of the passengers got off on the north side and passed the bridge on foot; that the plaintiff, who was a hotel keeper, came to defendant's depot to solicit passengers for his hotel, and seeing the train stop north of the river, and passengers alighting therefrom, and perhaps supposing the train would not cross, started north along the traveled track between the side and main track to meet the passengers from the train, and when about fifty feet north of the pile-driver, while walking along the said traveled path or track, the boiler exploded and he was injured.

It is said the ruling of the court below was that the plaintiff was either a trespasser on the defendant's right of way, or at best a mere licensee thereon, and could not, therefore, recover of the defendant company, unless he showed "that he was injured by the wilful misconduct of its servants or employees;" and it thereupon directed a verdict for the defendant.

The learned counsel of the appellant claims that the evidence tends to show — *First*, that the boiler and pile-driver,

when it exploded and injured the appellant, was standing within the limits of a public street of the city of Fort Atkinson; *second*, that the appellant, when injured, was passing along a public street of said city; *third*, that if he was not in a public street when injured he was traveling along a beaten path between the-railroad tracks, and not on the same, which had been used by the public for passing north and south over Rock river from Milwaukee street south to a public street on the north side of the river; and that for twenty years this way had been used by the public, traveling on foot between said points, with the knowledge and acquiescence of the railway company; *fourth*, that it was at least a want of ordinary care, if not gross negligence, on the part of the persons in charge of the pile-driver and steam boiler, to leave it unattended for the space of more than half an hour in the place and in the condition it was immediately before and at the time the boiler exploded and caused the injury.

It is not seriously disputed, on the part of the learned counsel for the respondent, that if the first two propositions are sustained by the evidence, or that if the evidence was such as would justify the finding of a verdict sustaining these propositions, then the ruling of the court directing a verdict for the respondent was error, and the judgment must be reversed. We think it would also be clear that the verdict was improperly ordered, if the evidence given on the trial showed that the appellant was in a public street of the city when the explosion took place. If that fact were proven there could be no charge made against the appellant that he was guilty of any fault which contributed to his injury, and, having a right to be upon one of the public streets of the city, the railway company was bound to use ordinary care, at least, to prevent an injury to him. And, as seen hereafter, we are very clear that the evidence tended to show that the persons in charge of the pile-driver and

boiler were not in the exercise of ordinary care when the explosion took place.

We are not prepared to say that there is sufficient evidence to sustain a verdict finding that the appellant was within a public street of the city when he was injured; and we would be unwilling to reverse the ruling of the circuit judge upon this point alone. Upon the first point, that the pile-driver and boiler were within the limits of a public street at the time of the explosion, we are more in doubt. But as we have concluded the verdict must be set aside upon other grounds, we do not deem it necessary to say anything more than this. It seems to us, after a careful reading of the evidence, there is proof in the case which might sustain a verdict that South Water street, spoken of in the evidence, was a public street, and crossed the right of way of the company in said city, as claimed by the appellant. But if this fact were found in favor of the appellant, it would not be decisive of his right to recover, if he were not himself within the limits of a public street when injured. It would only have a bearing upon the question of the company's negligence or want of care at the time the accident took place; and as we think the question of the company's negligence was a question for the jury, in the view of the case which we will now proceed to consider, we think it unnecessary to consider further what bearing such finding would have upon the appellant's rights.

As to the third proposition of the appellant, viz., that the appellant was traveling along a beaten path between the railroad tracks, and not on them, which had been used by the public for passing north and south over Rock river, from Milwaukee street south to a public street on the north side of the river, and that for more than twenty years the path had been " used by the public, traveling on foot between said points, with the knowledge and acquiescence of the company," we think the evidence tends strongly to sustain it;

and in order to sustain the directed verdict, we must consider the case as though such proposition had been found in favor of the appellant by the jury. It is urged that this court ought to say that the evidence does not establish the fact that the company ever in any way acquiesced in this use of their right of way by the public. We think that is clearly a question for the jury under the evidence in this case. We agree with the learned counsel for the railway company that the use of the right of way for the purpose of passage by individuals occasionally, even with the knowledge of the company, should not be construed into an acquiescence in such use by the company, simply because it did not expressly object to such use, or otherwise warn people from making such use of its right of way. But in this case the proof shows more than an occasional use; it tends to show a constant use daily, for twenty years or more, without any protest or objection on the part of the company. We think, from such constant and continued use, a jury might well say that such use was with the acquiescence of the company.

We do not wish to be understood as holding that even the continued use of the right of way of the company, as proved in this case, would establish a public way along the right of way of the company. To establish a public highway alongside of a railroad track, and upon the company's right of way, by a user of even the kind shown in this case, would, we think, be against public policy. Its only effect can be to relieve the persons passing over the same from being treated as trespassers by the company, so long as it continues to acquiesce in such use.

Treating the case as though the appellant, at the time of the injury, was not a trespasser, but a licensee, being where he was with the acquiescence of the company, the real question in the case is whether the company was guilty of any such want of care or negligence as would render it liable to respond in damages for the injuries sustained by the ap-

pellant. The ground taken by the learned counsel for the respondent, as we understand it, is that as to a person who is on the company's premises as a mere licensee for his own purposes, the company owes no duty of what he designates active care or watchfulness to prevent him from receiving injury; that in such case an injury to such licensee, resulting as a consequence of the omission of watchfulness on the part of the company or its employees, does not render the company responsible therefor. It is endeavored to make a distinction between the negligent performance of an act which directly causes the injury and the negligent omission to do an act which results in injury to the same person. Several cases are cited by the learned counsel which are supposed to go upon this distinction. *Nicholson v. Erie R'y Co.*, 41 N. Y., 525; *Sutton v. N. Y. C. & H. R. R. R. Co.*, 66 N. Y., 243; *Johnson v. B. & M. R. R. Co.*, 125 Mass., 75; *Sweeny v. O. C. & N. R. R. Co.*, 10 Allen, 368; *Carleton v. F. I. & S. Co.*, 99 Mass., 216; *Gillis v. Pa. R. R. Co.*, 59 Pa. St., 129; *I. C. R. R. Co. v. Godfrey*, 71 Ill., 500; *I. C. R. R. Co. v. Hetherington*, 83 Ill., 510; *Murray v. McLean*, 57 Ill., 378–383; and a number of other cases.

There is in these cases considerable discussion upon the subject of the relation between the licensor and licensee, and as to what, if any, duty the licensor owes to the licensee; but in nearly or quite all of the cases the question determined was whether, under the circumstances, the defendant was guilty of any neglect or want of care which the licensee might reasonably demand of him. In the first case cited, in 41 N. Y., the facts were that the railroad company had left four cars on their track near a place where the defendant was in the habit, with others, of crossing the same, without setting the brakes. It was proved that it was an up grade from the place where the cars were left to the crossing, and that they were driven upon the crossing by an unusually high wind. The circuit judge charged the

jury, as a matter of law, that it was negligence such as would render the defendants liable for the injury to the plaintiff if the brakes were not set. The court of appeals held that the charge was erroneous. It was also held in this case that the plaintiff himself was guilty of negligence in crossing the track with his hat drawn down over his eyes, and without looking to see whether there was any danger at hand. In the case in 66 N. Y., a similar question was raised whether the neglect to set the brake was in law negligence which rendered the defendant liable. The plaintiff's intestate was crossing the track as a mere licensee, and, while in the act, was killed by some cars which were unattended and without brakes set. Justice ANDREWS says: "If the brakeman knew that there was a slight descending grade at this place, he could not have anticipated danger to life from the slow movement of the cars a few feet down the grade. . . . It was not, I think, negligence towards the deceased for the brakeman to omit a precaution which, if taken, would have prevented the injury, when the injury could not reasonably have been anticipated, and would not, unless under exceptional circumstances, have happened from the omission."

In the case in 125 Mass., the court held the plaintiff was an intruder and trespasser on the defendant's right of way, and consequently was entitled to such care only as a trespasser can demand. In the case in 10 Allen, it was held the plaintiff was entitled to recover for reasons stated in the case. In the case in 99 Mass., the plaintiff was held entitled to recover because he had been invited to come upon the defendant's premises. The case in 59 Pa. St. was peculiar in its circumstances, and the company held not liable. The injury was caused by the breaking down of a platform not intended for a part of the depot platform, by the gathering of a large crowd of people from curiosity to see President Johnson and those with him, while stopping for a short

time at the depot. It was held the company were not liable. All the case holds, in fact, is that the company was not guilty of negligence towards a person having no business relations with the company, by reason of the insufficiency of the platform to bear up a crowd of people which it was not intended to accommodate and was not built to accommodate.

In the case in 71 Ill., the court seems to lay down the rule that a person who is on the railroad company's right of way by the mere acquiescence of the company is in no better condition than a wrong-doer or trespasser. We are of the opinion that if such a rule were intended to be announced by the court, it is neither sanctioned by authority nor justice. In 83 Ill. the same doctrine is announced. The main point, however, in that case related to the negligence of the plaintiff himself. The case in 57 Ill. was one in which the plaintiff was rightfully on the defendant's premises, and has very little bearing on the question involved in this case.

We think there is a very clear distinction between the care which a railroad company is bound to exercise towards a mere trespasser, and one who is on its right of way by the license of the company. In the case of the mere trespasser the company or its servants have no cause to anticipate that he will be on its track or in the way of danger, and therefore, a mere neglect to keep a lookout might not be such neglect as would render the company liable for running upon and injuring him. See *P. & R. R. R. Co. v. Hummell*, 44 Pa. St., 379. Some of the cases, however, hold that such neglect would charge the company for an injury to a mere trespasser. In a case like the one at bar, where the company know that the right of way is constantly used with its acquiescence by the public as a footway, its servants are charged with notice that it will be so used, and they cannot, without fault, proceed in a manner which must necessarily be dangerous to the persons so using the same. The cir-

Davis vs. The Chicago & Northwestern R'y Co.

cumstances of each case determine the degree of care which must be used by persons in charge of such destructive and dangerous instruments as steam engines and railroad trains. The law of the state which prohibits the running of trains within cities at a greater rate of speed than six miles per hour, is based upon the presumption that in such places there will be many people crossing the tracks or within the vicinity thereof, and that a due regard to life and limb demands that the cars shall not be run at a speed which will endanger life and limb. Every man's sense of justice and humanity dictates that a railroad company, in running its trains through a place where it must anticipate that men will be in a position to be injured by careless running, must, under such circumstances, exercise a different degree of care than when running in a place where men are not likely to be injured by want of care. It seems to me that a railroad company, after saying to the public, you may use my right of way for travel, cannot, after granting or even permitting such use, run their road without any regard to the fact that the public are so using the same. The knowledge of the company and its servants that the people are so using it with its acquiescence, imposes a duty at least of so running and managing their road as not to unnecessarily endanger the lives of those so using it.

It may be that the company is not compelled to use the highest degree of care to protect those so using its track, and that if it uses its road in the ordinary way, and an injury results, it may not be liable. But certainly it cannot increase the danger to those using its way, by acts of carelessness such as are not permitted in its ordinary use. The question is whether there was a want of that care on the part of the company and its servants which, under the circumstances, the plaintiff had the right to expect or demand. This idea is well expressed in the following cases:

In *B. & O. R. R. Co. v. State*, 33 Md., 542, 555, the court

say: "There are no circumstances under which the defendant could be relieved of the duty of using ordinary care. What constitutes ordinary care may vary with varying circumstances; but as a general rule it is for the jury to determine, and we discover nothing to relieve the case from the operation of the general rule." In this case the deceased had been killed while walking on the defendant's track.

*Isabel v. H. & St. J. R. R. Co.*, 60 Mo., 475–481. This was also an action to recover damages for an injury to a child unlawfully on its track, and the court say: "Our decisions have been uniform, that, although a person may be improperly or unlawfully on the track of a railroad, still that fact will not discharge the company or its employees from the observance of due care, and they have no right to run over and kill him, if they could have avoided the accident by the exercise of ordinary caution or watchfulness." Again they say: "Diligence and negligence are relative terms, and depend on varying circumstances. An act may be negligent at a particular place which would not be so at another place and under different circumstances." "In the present case the house was built before the road was constructed. The company had run its road in close proximity to the house, and had left the well, where the family got their water, on the other side of the track. They knew that the track ran close to the house, and that the family were accustomed to cross it to obtain water. This ought to have increased their vigilance."

In *Griffiths v. L. & N. W. R'y Co.*, 14 L. T. Rep., 797, BRAMWELL, Baron, says: "If the defendants had had reason to expect that people would pass under this crane, or had invited them by word or conduct in any way so to do, there would have been evidence of negligence, of which the suffering party might complain." In this case it will be seen that the defendants are called upon to use ordinary care towards those persons who may be reasonably expected

to pass near the dangerous instrument in use, as well as towards those who are there by invitation.

In *Corrigan v. Union Sugar Refinery*, 98 Mass., 577, the court uses the following language:  " The material question is whether the keg fell upon the plaintiff's head by reason of the negligence of the defendant's servant.  If it did, then whether this was a public or private way, and whether the plaintiff was passing over it in the exercise of a public right, or upon an express or implied invitation or inducement of the defendants, *or by their mere permission*, he was rightfully there and may maintain this action.  Even if he was there under a permission which they might at any time revoke, and under circumstances which did not make them responsible for any defect in the existing condition of the way, they were still liable for any negligent act of themselves or their servants which increased the danger of passing, and in fact injured him."

In *Gallagher v. Humphrey*, 6 L. T. (N. S.), 684, COCK-BURN, C. J., says: " I quite agree that a person who merely gives permission to pass and repass along his close, is not bound to do more than allow the enjoyment of such permissive right under the circumstances in which the way exists; that he is not bound, for instance, if the way passes along the side of a dangerous ditch, or along the edge of a precipice, to fence off the ditch or precipice.  The grantee must use the premises as the thing exists.  It is a different question, however, where negligence on the part of the person thus having granted the permission is superadded.  It cannot be that having granted permission to use the way, subject to existing dangers, he is to be allowed to do any further act to endanger the safety of the person using the way. The plaintiff took the permission to use the way, subject to a certain amount of risk and danger, but the case assumes a different aspect when the negligence of the defendant — for the negligence of the servant is his — is added to the risk

and danger." . WIGHTMAN, Justice, says: "It appears to me that such a permission as is here alleged may be subject to the qualification that the person giving it shall not be liable for injuries to persons using the way arising from the ordinary state of things, or of the ordinary nature of the business carried on, but that is distinguishable from the case of injuries wholly arising from the negligence of that person's servants." The injury in this case was caused by negligence in lowering goods from a warehouse, by reason of which the goods fell upon the plaintiff as he was passing by such warehouse. The case of *Hounsell v. Smyth*, 7 C. B. (N. S.), 743, which is cited by the learned counsel in this case, and relied upon, was cited in that by the defendant, and the court held it not applicable to a case where the negligence of the defendant or his servants was the direct cause of the injury. The language of the judges in the case above cited is referred to in the case of *Sullivan v. Waters*, 14 Irish Com. Law R., 474, with approval.

In the case of *Sutton v. N. Y. C. & H. R. R. R. Co.*, 66 N. Y., 244, much relied upon by the learned counsel for the respondent, the court say: "The defendant having authorized the workmen to cross the track, could not act so as to mislead them, and subject them without notice to perils from which they had a right to suppose they were exempt, without responsibility in a case of injury. But it owed them no duty to guard them from accident, no duty of active vigilance." Certainly this language does not mean that the company, under the circumstances, did not owe the workmen the duty to guard them against the palpable negligence of its servants. The fact that there was no duty of active vigilance does not imply that the company or its servants could be actively negligent.

In *P. & R. R. R. Co. v. Hummell*, 44 Pa. St., 379, Justice STRONG says: "The defendant had no reason to suppose that either man, woman, or child might be upon the railroad

when the accident happened. They had a right to presume that no one would be on it, and to act upon such presumption. . . . *Ordinary care they must be held to, but they may have a right to presume, and act upon the presumption, that those in the vicinity will not violate the law, will not trespass upon the right of a clear track;* that even children of a tender age will not be there, for, though they are personally irresponsible, they cannot be upon the railroad without a culpable violation of duty by their parents or guardians." The company was held not negligent in this case upon the grounds above stated. In the case at bar it is clear that the evidence at least tends to prove that the company and its servants had reason to suppose that the plaintiff or other persons would be, with the acquiescence of the company, on its right of way at places where an injury would be likely to occur to them if the boiler on the pile-driver was permitted to explode by the carelessness of those in charge of it at the place where the same was left by them. If the boiler had been carelessly left standing alone in a place where the servants of the company had no cause to suspect that persons would be passing and repassing in its immediate vicinity, it would have been in some respects like the case of *Sutton v. N. Y. C. & H. R. R. R. Co.* The two cases do not present the same points.

In *Vanderbeck v. Hendry,* 34 N. J. Law, 472, the court say: "It is well settled that the permission for or acquiescence in passage over dangerous lands, whether naturally so or by reason of their use, creates no duty except to refrain from acts which are wilfully injurious or knowingly in the nature of a trap, and except, also, where the circumstances are such that the concealment of hidden dangers would be in the nature of fraud, and then the duty would be to disclose them. The rule is that he who enjoys the permissive or passive license is only relieved from the responsibility of a trespasser, and must assume all the ordinary risks attached

to the nature of the place or business carried on." Quotation might be made of a similar character from numberless cases, but to do so would unreasonably extend this opinion, and we will only add the following authorities as holding similar views with those above quoted from: *C. & N. W. R'y Co. v. Smith*, 4 Am. & Eng. R'y Cas., 535; *Hoffman v. N. Y. C. & H. R. R. R. Co.*, 87 N. Y., 25; *Rounds v. D., L. & W. R. R. Co.*, 64 N. Y., 129; *H. & T. C. R'y Co. v. Sympkins*, 54 Tex., 615; *Driscoll v. N. & R. L. & C. Co.*, 37 N. Y., 637; *Frick v. St. L., K. C. & N. R'y Co.*, 5 Mo. App., 435; *Daley v. N. & W. R. R. Co.*, 26 Conn., 591; *Hydraulic Works Co. v. Orr*, 83 Pa. St., 332.

We do not wish it to be understood that we approve of all that may be said by the learned judges in the cases cited, as some of them, perhaps, hold the defendants to a higher degree of care than this court would under similar circumstances. The general rule to be derived from all the authorities resolves itself into the one question, Was the defendant guilty of any culpable want of care, under all the circumstances, and did such want of care result in an injury to the plaintiff? This court has considered questions similar to those presented by the case at bar, in the cases of *Delaney v. C., M. & St. P. R'y Co.*, 33 Wis., 67; *Townley v. C., M. & St. P. R'y Co.*, 53 Wis., 626. In each of these cases we think it is distinctly held that the railroad company owes the person who may be on its track or right of way by its acquiescence a duty of care towards such person which it does not owe to mere trespassers, and is not at liberty to treat them as mere trespassers. In the first case cited the present chief justice, after showing that the plaintiff was not a mere trespasser upon the defendant's right of way, says: "We therefore think the circuit court was entirely right in holding, upon this proposition, that the plaintiff was not precluded from recovery solely upon the ground that the place where the injury occurred was not a public street,

Davis vs. The Chicago & Northwestern R'y Co.

and that it was not necessary, under the circumstances, for the plaintiff *to aver and prove gross negligence* on the part of those persons who had charge of the locomotive engine and tender, in order to maintain the action."

In the case of *Townley v. R'y Co.*, *supra*, it was urged to some extent, as it is in the case at bar, that, even as to persons who were upon the defendant's right of way as licensees, the company owed no duty of care, and could only be held, as in the case of trespassers, to respond for wilful injury or gross negligence; and many of the cases cited by the learned counsel for the respondent in this case were cited by counsel in that case. See page 630. Justice CASSODAY, who wrote the opinion in the *Townley Case*, starts out with the question, " Was there an absence of negligence on the part of the defendant?" The whole argument of the opinion is based upon the theory that the defendant was answerable for the injury if its employees were negligent in running the switch-engine which caused the injury. It was taken for granted that although the plaintiff was on the track simply by the license or acquiescence of the defendant, still the defendant owed a duty to such licensee to exercise ordinary care in running its trains and engines; and if an injury was inflicted, by reason of the want of such ordinary care, then the defendant was liable. Again, in discussing the question of the correctness of excluding certain evidence on the trial, Justice CASSODAY says: " If such custom existed, and men, women, and children were daily and hourly passing over the same pathway, it certainly had an important bearing, not only upon the question whether Rosa was guilty of contributory negligence at the time, but whether the defendants were exercising ordinary care at the time. If men, women, and children were daily and hourly passing, the servants of the defendants in charge must have known the fact, and hence were called upon to exercise more vigilance and care than though such passage seldom

occurred." It seems to me that these cases in this court give no sanction to the theory that a railroad company owes no duty to care for the lives and limbs of those whom it permits to occupy its right of way for the purpose of passage, and can only be held responsible for their wilful injury, or for injury which is the result of gross carelessness on the part of the servants of such company. Nor am I able to see that they give any sanction to the theory that although the company, in such case, may be liable where the injury is the direct result of a negligent act of commission, it will not be liable when the injury is the result of the negligent omission of an act which in the exercise of due care the defendant ought to perform.

The case of *Cahill v. Layton*, 57 Wis., 600, is not in conflict with the cases above cited. All that was decided in that case is that the defendant, in dedicating the way in question for the use of certain persons, dedicated it as it was, and that he was not answerable for an injury received by a person using the same, which was the result of an obstruction in the way as dedicated. It was decided upon the same grounds stated in the case of *Gallagher v. Humphrey*, *supra*. In that case there was no question of any negligence on the part of the defendant which rendered the way more dangerous for use than when it was first dedicated, nor of any act of negligence of the defendant occurring at the time which caused the injury. We do not perceive that the opinion in that case has any particular bearing upon the question involved in the case at bar.

The evidence in the case at bar tends to prove that the persons in charge of the boiler and pile-driver were culpably negligent in leaving it unattended for more than half an hour in the condition the evidence tends to show it was. Hayward, the defendant's witness, and who was competent to give an opinion on the subject, testified that if the boiler was left with such a fire in the fire-box as the plaintiff

claimed the evidence showed there was, an improper amount of steam would be generated in the boiler. He further said: " It is not safe and proper to leave a boiler and engine unattended with a large fire in the fire-box. It is very unsafe and improper to do it with a large fire." It was certainly for the jury, and not for the court, to say, upon the whole evidence, whether this act of negligence was the cause of the explosion. And it was also. for the jury to say whether it was a want of ordinary care on the part of those in charge to leave so dangerous an engine unattended in the immediate vicinity of a place where they knew people would be passing and repassing. This court cannot say, as a matter of law, that the explosion was the result of causes which were unforeseen, and that such explosion would have occurred at the same time and in the same way, and produced the same injury, if the men in charge had remained there during the half hour they absented themselves. These are questions for the jury.

We do not say that the plaintiff could recover in this action if the jury should find as a fact that the explosion of the boiler was the result of a defect in the iron of which it was originally made, or because of defects arising out of its use, and which were unknown to the persons in charge at the time of the accident, and were not discoverable by the ordinary inspection given to it. An explosion occurring from such causes might be said to be one of the risks incident to the business, and that all such risks the licensee assumes when he avails himself of the privilege granted by the company; but if they find that the explosion occurred by reason of the negligence of those in charge in permitting the steam to be raised to an unsafe pressure in the boiler, and that the explosion occurred from that cause, then we think the clear weight of authority is in favor of the plaintiff's right to recover. Upon the first theory, the want of attendance at the time would not be the

cause of the explosion; and, on the second theory, it would be, or might well be found to be.

It is suggested that because the statute makes it an offense to walk along the track of a railroad, the defendant should not be held liable for an injury which is caused by its negligence. We do not think this statute can have any effect in a case like the present, where the proof shows that the law was constantly violated by the people with the knowledge and acquiescence of the defendant. It might have some bearing upon the question of negligence as to mere trespassers, as the company would have the right to say, perhaps, that it was not bound to the exercise of care towards those whom the law had forbidden to be upon its right of way. See *Townley v. C., M. & St. P. R'y Co.*, 53 Wis., 634. The other questions discussed by the learned counsel for the appellant do not seem to me to have any direct bearing upon the plaintiff's rights, except so far as they tend to prove that he was not a mere trespasser on the defendant's way at the time he was injured. We think the case should have been submitted to the jury upon the question of the negligence of the defendant's employees in charge of the boiler and pile-driver at the time the explosion took place which caused the injury.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.