EMMA WILLIAMS v. JOHN C. EDMUNDS.

*Negligence—Careless driving—Master and servant—Evidence—General reputation—Charge to jury—Contributory negligence.*

1. In a suit for damages for injuries claimed to have been received by reason of the careless and reckless driving of defendant's servant, his condition as to being drunk or sober at or about the time of the accident is a proper subject of inquiry.

2. In such a case the general character of the servant for sobriety is not in issue, and cannot be shown any more than his general character and reputation as a careful driver.

3. An instruction to a jury in a negligence case that, if the plaintiff was guilty of that negligence without which the accident would not have occurred, she cannot recover, but if the defendant's servant *alone* was negligent, and *his* negligence occasioned the injury, she could recover, is equivalent to an instruction that the plaintiff must show that the *sole proximate* cause of the accident was the negligence of such servant.

Error to Wayne. (Hosmer, J.) Argued April 11, 1889. Decided June 7, 1889.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*F. A. Baker*, for appellant.

*Gurney & Lowrie (James H. Pound*, of counsel), for plaintiff.

MORSE, J. The defendant is the proprietor of a livery stable in the city of Detroit.

On the twenty-fourth day of December, 1886, one of his carriages, driven by Daniel Sullivan, an employé, ran over the plaintiff at a street crossing at the corner of the Campus Martius and Monroe avenue, severely injuring her.

The substantial ground of complaint in the plaintiff's declaration was that the defendant, by his servant Sullivan, so carelessly, rapidly, and improperly drove, governed, and directed his carriage and horses, that by and through the carelessness, negligence, and improper conduct of the defendant, by his said servant, the said horses and carriage ran and struck the said plaintiff with great force and violence, whereby she was thrown with great force and violence to the ground; that the defendant, by his said servant, was negligent in this, to wit:

"That by and through his said servant he recklessly and carelessly drove said horses at a high rate of speed, and did not exercise due care and caution towards the safety and rights of pedestrians and others in crossing the cross-walk whereon said plaintiff was crossing said avenue or street, and failed and neglected to keep said horses under control, so that they could be promptly checked and stopped so as to avoid running against and upon the plaintiff and other pedestrians.

"By means of the said several premises aforesaid the said plaintiff was then and there greatly bruised," etc.

The plaintiff recovered a judgment of $3,500 in the Wayne circuit court, which, upon a motion for new trial, was subsequently reduced to $3,000.

The plaintiff claimed that between the hours of 5 and 6 o'clock P. M., as she was, with due care and caution, crossing the street, and when she was on the crossing, about midway between the sidewalk and the street-car track, she was knocked down and run over by the horses and carriage of the defendant.

"I was knocked down by horses coming fast. I did not see the horses before they struck me. I was right between the horses before ever I saw them. I was knocked so quick I hadn't time to think or scream, or anything else."

The horses stepped upon her, and one or more of the carriage wheels ran over her. She testified that she looked up and down the street before crossing, and saw no team coming.

"It was getting kind of dark. I don't think it was real dark. The lights were lit. I could see quite a ways around me; I don't know how far. I didn't dodge at all. I had no time. I was right between the horses before I noticed them."

Henry Yost, and his daughter Maud, 14 years old, saw the occurrence, as did also a boy, Bennie Binberg, of the same age as Maud.

Yost was going towards the team, but he did not see them until they were within a few feet of plaintiff. He thought the horses were going at the rate of 10 miles an hour, and that they did not stop after the accident, and kept up about the same motion until they passed out of his sight. His daughter corroborated him.

Bennie Binberg testified that the horses were going at a very rapid rate. He did not see the driver hold them up before or when he came to the crossing.

"I don't remember whether he slackened the horses or not after they had run over her."

Sullivan, the driver of the carriage, testified that, obeying the instructions from the livery office, he drove that afternoon over to Gratiot street for Mr. Penniman to take him to the Michigan Central depot. He drove down Farmer street to Monroe avenue, and came down that avenue at a regular gait.

"When I was coming towards the crossing about the length of the carriage I pulled up my team nearly to a walk, and there was a large crowd on the cross-walk, passing,—six or seven persons. The street was very crowded that night.

"When I came up to the cross-walk this woman was passing me,—was past me some two or three feet, and she looked around, and she jumped right back again. Of course, I had no power in a moment. Then, when I saw her jump back,

I turned the team towards the street-car track. I turned them right around, and then I stopped my team, and I shoved down.

"There was a furniture wagon on Monroe avenue standing, and that furniture wagon came to the curb-stone, so I stopped my team, and I then was shoved down. There was a lot of rigs passing,—coupes and carriages and everything, —and I went down as far as Woodward avenue, and a man with a cutter came up to me. He asked my name, so I gave him my name, and gave him Mr. Elmunds' name, and then I drove to the depot."

He was arrested as he was returning to the livery barn, going back the way he came.

Mr. Penniman, who was inside the carriage, testified that he felt the horses slowing up. It was a close carriage, and when the carriage was nearly standing still he heard some one scream.

"The driver swung his horses right around the other way to the left, and I opened the door to look out, because the horses were turned around, so I could see out that door, and I saw a crowd there, and something on the ground. I was going to get out, and there was a crowd there, and I said, 'Go on to the depot.'"

Upon the trial the defendant offered testimony tending to show that Sullivan was not addicted to the use of intoxicating liquors, and what his reputation was as to his being a reckless and careless driver, or a good, faithful driver.

This proposed evidence was excluded.

The defendant's counsel in this Court does not attempt to claim that he was entitled to show the reputation of Sullivan as a driver, but he argues that he ought to have been permitted to show that the driver was a temperate man, and not in the habit of using intoxicating liquors.

He bases his argument on the fact that the officer who arrested Sullivan as he was driving back from the depot was allowed to testify, as were others, that he was under the influence of liquor.

The defendant was permitted in rebuttal of this evidence

to show that Sullivan was not intoxicated or under the influence of liquor at the time the plaintiff's witnesses testified he was. Sullivan also testified that he had not been drinking that day, and that he was not in the habit of drinking or getting drunk.

We think the condition of the driver, as to being drunk or sober at the time or about the time of this accident, was a proper subject of investigation, being part of the *res gestæ*

It was not, however, necessary or material to go further into the question of what his habit was as to the use of intoxicating liquors, or whether or not he was a temperate man in the opinion of other people. It would have raised a collateral issue, the determination of which would have had but slight, if any, bearing upon the question at issue in the case.

We do not think his general character for sobriety was in issue or admissible any more than was his general character and reputation as a careful driver. The jury were only concerned with his condition and manner of driving on the day in question at the time of the injury to plaintiff. *Fahey v. Crotty,* 63 Mich. 387 (29 N. W. Rep. 876); *Heland v. Lowell,* 3 Allen, 407; *McCarty v. Leary,* 118 Mass. 509.

Dr. McLean and Dr. Richards were sent by the defendant, at one time to examine plaintiff, and ascertain the nature and extent of her injuries. She declined to submit to an examination. Defendant's counsel claims that he was not permitted to show what took place, and what was said between the doctors and the plaintiff. An examination of the record shows that the court did at first exclude this testimony, but afterwards Dr. Richards was permitted to state what was said and done there without objection.

The court instructed the jury upon the matter of the contributory negligence of the plaintiff, as follows:

"If you find that the plaintiff contributed in any way to this accident, that her negligence was the proximate cause—when I use the words 'proximate cause,'—because

the counsel have requested me to charge you that she must recover if the defendant's servant was negligent, unless her negligence was the proximate cause,—when I say the proximate cause, I mean contributed directly to the injury.

"If she was guilty of that negligence *without which the accident would not have occurred,* why, then, of course, she cannot recover. If she is negligent, or if she contributed to this accident by her negligence, why, then, of course, she cannot recover; but if the defendant's servant or driver, Mr. Sullivan, *alone was negligent,* and his negligence occasioned this injury, then she is entitled to recover such damages as I shall hereafter call your attention to."

The defendant's counsel objects to this charge as not being clear and distinct, and that it, in effect, instructed the jury that the plaintiff might recover unless the plaintiff's negligence was the sole proximate cause of the accident.

The charge is not open to this construction. When the court instructed the jury in the language that I have italicized, that the plaintiff must show that Mr. Sullivan "alone was negligent," and that if she was "guilty of that negligence without which the accident would not have occurred," it seems to me that the jury were clearly instructed that the plaintiff must show that the sole proximate cause of the accident was the negligence of the defendant's servant. If the plaintiff made such a case that the jury were satisfied that no act of hers contributed to this accident, and that no omission on her part to act caused it, it was certainly sufficient; and if any acts of hers could be said to have contributed to the injury, or any failure of hers to do what she ought to have done, then, without those acts or any of them, or if she had done what she ought to have done under the circumstances, the injury certainly would not have happened. If she was careless in any respect, she could contribute by such carelessness to the injury, but, if she was not careless in any way, she could not contribute to it.

If she did nothing that helped on this accident, either by commission or omission, she could not be guilty of contribut-

ing to it, nor be said to have done any act that contributed to the proximate cause of the injury.

Suppose, in this case, that it was true that, as the defendant's servant neared the crossing, the plaintiff had passed two or three feet, as Sullivan testifies, beyond the team on the crossing, and she jumped back, as he says, in front of the team, and this should have been found as negligence on her part. The accident in that case would not have happened if she had not jumped back, no matter how careless Sullivan might have been in his approach to the crossing. If she did jump back, and that act of hers was carelessness, then Sullivan might also have been careless, and the carelessness of each would have contributed to the accident. It seems to me that her negligence, in order to have contributed to the accident, must have been some act or acts of hers, or omission to act on her part, without which, as in the language of the trial judge, the accident would not have occurred.

If she could not have saved herself by any act which she might have done under the circumstances, it is difficult to perceive why she should be chargeable with negligence for not doing that which, if she had done it, would not have prevented the accident.

And the converse of the proposition is also true that if, under the circumstances, she could not have saved herself by omitting to do anything which she did do, then she ought not to be charged with negligence for doing anything which, if she had not done it, would not in any way have prevented the accident or lessened her injuries. In other words, if she could not have prevented the accident or lessened the injury by anything she might have done that she did not do, or by failing to do anything that she did do, she cannot be considered guilty of negligence.

The defendant's counsel also requested the court to instruct the jury as follows:

"Under the evidence in this case, the plaintiff cannot

recover, unless you find that the team in question was driven too rapidly as it approached the crossing where the accident occurred."

This was not given as requested. We think it was properly refused.

If the defendant's servant did not drive too rapidly, there was yet evidence in the case to go to the jury tending to show him to have been negligent in the management and control of his team.

The counsel also insists that plaintiff could not recover in this action, under the declaration and proofs, for the washing done for her by her sister, which she was unable to do for herself.

Certainly the loss of her services—her inability to do her own and usual work on account of this accident—was com_ petent to be shown in damages, if properly pleaded. The allegation that she " was hindered and prevented from transacting her lawful affairs and business " would seem to cover it, as it may be inferred, I think, that this woman, if able, would do her own washing. The testimony shows that she did do it before the accident. The court charged the jury, her sister having done it for her since her injury, that if her sister did it as a mere gratuity, on account of her relation to and friendship for plaintiff, and without hope of reward, as an act of kindness, it could not be recovered for in this action, but, if the sister did such washing with the hope of reward, it could be considered as a legitimate claim against the defendant, and as part of the damages to be estimated in arriving at the amount of the verdict.

It is claimed that the court did not permit the jury to consider in mitigation of damages what the plaintiff had received from the defendant. We find this claim to be erroneous. Defendant had paid various expenses attending plaintiff's illness from her injury, and obligated himself to pay some physicians' bills. The amount paid out was shown

to have been about $260. The court plainly informed the jury that this amount must be deducted from the whole amount found to be due the plaintiff for damages, and no claim was made or allowed upon the trial for the bills of physicians that defendant had agreed to pay.

We find no error in the case, and the judgment must be affirmed, with costs.

The other Justices concurred.