---

## NORTHERN PAC. R. CO. v. CRAFT.

(Circuit Court of Appeals, Ninth Circuit. June 24, 1895.)

No. 205.

1. NEGLIGENCE—QUESTION FOR JURY.

One C., an employé of the N. Terminal Co., was run over and killed by an engine of defendant railway company, in the yards of the terminal company, which were used by defendant and two other railroad companies. The accident happened at night, while the engine was being run from the coal bunkers to the roundhouse, in charge of an engine hostler and two wipers. It appeared that one of the wipers, as the engine approached a switch, got down and ran ahead to open it; that he heard cries, and, looking back, saw C. being pushed along on the pilot of the engine; that he called to the hostler, who was running the engine, but it did not stop; that he then jumped on the engine and found the hostler in a situation which indicated that he was either asleep or intoxicated; and that in the meantime C. had been run over. It also appeared that the lights in the vicinity of the accident were such that C. could have been seen if a lookout was kept, and that the bell was rung until the wiper left the engine to open the switch; but there was no evidence that it was rung afterwards. There was some evidence that C. was intoxicated on the night of the accident, but also evidence that he was able to take care of himself and do his work. *Held*, that the questions of defendant's negligence and C.'s contributory negligence were properly left to the jury.

2. SAME—FELLOW SERVANTS.

The duties of C. were to the terminal company, and of the engine crew to the defendant railway company, and there was no evidence that there was any common superior having control of all persons engaged about the yards. *Held*, that the fact that both C. and the engine crew were engaged in moving and caring for defendant's cars in the yards did not make them fellow servants.

3. SAME—EVIDENCE.

*Held*, further, that it was not error to admit evidence tending to show that the engine hostler was intoxicated, though his intoxication was not pleaded as a specific act of negligence, since such intoxication, if it existed, was not an act of negligence, but a circumstance tending, with others, to prove the charge.

In Error to the Circuit Court of the United States for the District of Oregon.

This was an action by Julia Craft, administratrix of Benjamin P. Craft, deceased, against the Northern Pacific Railroad Company for causing the death of said Benjamin P. Craft. The plaintiff recovered

a judgment in the circuit court. A motion for a new trial was denied (62 Fed. 735). Defendant brings error. Affirmed.

Dolph, Mallory, Simon & Strahan and Joseph D. Redding, for plaintiff in error.

Watson, Beekman & Watson (Andros & Frank, of counsel), for defendant in error.

Before McKENNA and GILBERT, Circuit Judges, and KNOWLES, District Judge.

GILBERT, Circuit Judge. Julia Craft, the administratrix of the estate of Benjamin P. Craft, deceased, brought an action in the circuit court of the United States for the district of Oregon against the Northern Pacific Railroad Company to recover damages for the death of the plaintiff's intestate, alleging that on August 15, 1892, while said Benjamin P. Craft was lawfully engaged in the course of his employment as a car accountant of the Northern Pacific Terminal Company, the defendant carelessly and negligently, without ringing a bell or having sufficient lights displayed, or giving warning, or keeping a lookout on the track in front, ran one of its engines over the said Benjamin P. Craft, causing his death. The defendant denied this averment of negligence, and asserted the defense of contributory negligence, alleging that the accident resulted from the negligence of said Craft in being intoxicated, and while in that condition lying down and going to sleep upon the track. The deceased was a car accountant employed by the Northern Pacific Terminal Company, a corporation which had charge of the yards, station, and other terminal facilities at Portland, which were jointly used by the Northern Pacific Railroad Company, the Union Pacific Railroad Company, and the Southern Pacific Railroad Company, under contracts with the said Northern Pacific Terminal Company. The work of the said deceased consisted in taking the numbers and weights of cars that were brought into the yards by the various railway companies, and such service required his presence in different parts of the yards. The accident which caused his death occurred at 2 o'clock in the morning. He was last seen before the accident at about 1:30 o'clock. At that time he was about three or four hundred feet north of the depot, going north on the platform alongside the track, and carrying a lighted lantern. The engine that caused his death came in at about 12:45, with a passenger train, and was shortly afterwards taken about a quarter of a mile north of the depot to the coal bunkers, there to be coaled up, and it was in charge of Stapleton, an engine hostler, and Berry and Cobb, two engine wipers. After being coaled up, the engine started back toward the depot, on its way to the roundhouse. Two switches had to be thrown to enable it to run to the roundhouse, one connecting the coal-bunker track with the main line, the other the main line with the roundhouse track. A plank platform extends from the depot to a point about 50 feet north of where the deceased was struck. There are two tracks upon this platform. The switch connecting with the roundhouse track is about 200 feet south from the

north end of the platform. When the engine had approached within 150 feet of this switch, Berry jumped down and ran ahead to throw it. He had reached the switch, and was about to throw it, when he heard Craft cry out, and looking around he saw him being pushed along on the end of the engine pilot. Berry shouted twice to the engineer to stop, but the body of Craft passed under the engine immediately after Berry first saw him. The engine was not stopped immediately in response to Berry's call, and Berry climbed into the cab, and took hold of Stapleton's arm, and told him that the engine had run over a man. Cobb was just then getting down from the engine. Stapleton was sitting in his seat, and did not have hold of the lever. Craft's lantern was found 150 feet from his body. It was lying alongside the track, overturned and unbroken, but with the light out. Stapleton testified that the engine was running at about four miles an hour, and Berry testified that he rang the bell until he got off the engine to throw the switch. There was no evidence that the bell was rung afterwards. The jury returned a verdict for the plaintiff in the sum of $3,200.

Error is assigned to the action of the trial court in admitting evidence tending to show that Stapleton, who was in charge of the engine at the time of the accident, was intoxicated, or under the influence of liquor. It is contended that the complaint contained no allegation of such intoxication, and did not allege the same as a specific act of negligence, and that there was consequently no ground upon which such evidence was admissible. The evidence so admitted was the testimony of the witness Berry, who said, in answer to a question concerning Stapleton's condition, that he did not know whether or not Stapleton had been drinking that evening, but that he had on occasion seen him drink a glass of beer, and he finally stated that he thought he had seen him drink one glass that night. There is nothing in this testimony which would tend to show that Stapleton was intoxicated at the time of the accident, and it is impossible to perceive how the plaintiff in error could have been injured thereby. But, in any view of the purport of that portion of the evidence, there was no error in its admission. The fact, if proven, that the defendant's servant whose negligence may have caused the injury was intoxicated at the time of the accident was not in itself an act of negligence, but it was a circumstance to be considered with the other evidence tending to prove the charge laid in the complaint. The negligence, if any there was, upon the part of the defendant's servants, consisted in their failure to take proper precautions while driving the engine through the yard, not in the fact that Stapleton or any one else was intoxicated. But evidence of such intoxication might properly be considered in connection with the other proof which was adduced showing Stapleton's actions and conduct at the time the accident occurred. Wynn v. Allard, 5 Watts & S. 524. Williams v. Edmunds, 75 Mich. 92, 42 N. W. 534.

It is also assigned that the court erred in declining to instruct the jury, at the close of the testimony, to return a verdict for the defendant. It is contended that such instruction should have been given, upon two grounds—First, that there was no evidence of

negligence on the part of the defendant; and, second, that the negligence of the deceased contributed to his death. Taking the whole testimony into consideration, we are unable to say that there was not evidence sufficient to go to the jury tending to show negligence of the defendant. The facts disclosed unquestionably gave room for the inference that proper precaution may not have been taken by the men in charge of the defendant's engine to give warning of the engine's approach at the time of the accident. Berry, it is true, testifies that a bell was rung. He says that he rang it from the time he threw the switch to let the engine on the main line until he got off the engine to throw the second switch. But he also says that he was at the same time looking out for the place to get off the engine, and that he has no knowledge whether or not the bell was rung after he got off. There was no other testimony that a bell was rung, and the jury may have reached the conclusion that, while Berry's testimony was in the main correct, the ringing may not have been continuous up to the time when he got off the engine. So far as keeping a lookout is concerned, it appeared that that duty devolved upon Stapleton. He testified that he did not see either the deceased or his lantern. His failure to see him was not on account of any obstruction, because the track was clear; nor was it on account of darkness, for the evidence shows that the headlight of the engine cast a light 150 feet ahead, and that there was an electric arc light not more than 300 or 400 feet distant. The only inference is that he was not keeping a lookout; otherwise it is not apparent that he could have failed to see the deceased. The evidence of Berry, moreover, tended to show that Stapleton was not attending to his duties. Berry's manner of testifying indicated an unwillingness to fully disclose the facts, but enough appears from his testimony to show this much, at least: That when he shouted the engine was not stopped; that he then jumped on the engine; that Stapleton and Cobb were there; that he laid his hand upon Stapleton and informed him that a man had been run over; and that Stapleton was then sitting on his seat, and said nothing, but threw his legs around the lever and got down off the engine. On being asked whether Stapleton was awake, he said: "I do not know. He was sitting there on the seat. The supposition is he would be awake." And, on being further and frequently interrogated as to Stapleton's appearance and condition, he admitted that he did not know whether Stapleton was running the engine or not, or whether he had hold of the engine or not, and, finally, in answer to the direct question whether or not Cobb was trying to run the engine after leaving the coal bunkers, he said: "Cobb backed it up from the coal bunkers, I think, onto the main line. After we got done putting on the coal, the man said he was done coaling, and Cobb says: 'I will back her up on the main line, and you go ahead and back her through the switch.' Cobb said this to me." It was a noteworthy fact—and it was doubtless considered by the jury in connection with this testimony—that Cobb, who was still in the employment of the defendant at the time of the trial, was not called as a witness by the defendant, and his absence was not explained.

The facts disclosed in the testimony of Berry were such as to suggest to the jury that Stapleton was either inattentive to his duty, or was for some reason disqualified to render his usual service as engineer. The fact that Berry got upon the engine and took hold of his arm to arouse his attention may have been understood to indicate that he was either asleep or stupefied. In short, the whole situation, as depicted by the witness, appears to have justified the inference that Cobb and Berry were substantially in charge of the engine, and that Cobb, who was an engine wiper, was attempting to act as the engineer in getting the engine back to the roundhouse, and that no one was keeping a lookout. Since there was evidence, therefore, tending to show that proper precaution was not taken while the engine was being driven through the yards, the case was properly submitted to the jury to decide whether the death of the plaintiff's intestate was attributable to the negligence of the defendant's servants. The deceased was not a trespasser upon the track. He was lawfully there in the discharge of his regular duties, and the defendant's employés owed him proper vigilance and care. McMarshall v. Railroad Co., 80 Iowa 757, 45 N. W. 1065; Erickson v. Railroad Co., 41 Minn. 500, 43 N. W. 332; Schlereth v. Railroad Co., 115 Mo. 87, 21 S. W. 1110; Whalen v. Railroad Co., 75 Wis. 654, 44 N. W. 849; Davis v. Railroad Co., 58 Wis. 646, 17 N. W. 406; Mark v. Railway Co. (Minn.) 20 N. W. 131; Railway Co. v. White, 84 Va. 498, 5 S. E. 573.

Nor do we find in the record sufficient proof of contributory negligence on the part of the deceased to have justified the court in taking the case from the jury. There was evidence, it is true, that he had been drinking that night, and was intoxicated, but the testimony upon this point was conflicting. The last person who saw him before the accident was Millaine, who says that at half past 1 o'clock he was pretty full, but was able to do his work. At that time he was going north from the depot, probably to take account of the cars that had been brought in at 12:45. It is in evidence that in the performance of his duty he carried with him two books, in one of which he made entries of the weights of the cars, and in the other he kept account of cars forwarded and received. The first of these books was in evidence showing entries made that night, and there is nothing in the nature of the entries to indicate that his work was imperfectly performed. The other book, that in which would have been found, if made, the entries of the last train of cars, was not produced or accounted for by the defendant. The defendant's contention that the deceased was lying upon the track at the time of his injury, or had been lying upon the track at any time that night, rests upon conjecture, and is unsupported by evidence. The fact that the lantern was overturned and extinguished and lying off the side of the track at the point where the deceased was struck, and the further fact that he was probably carried a distance of 150 feet after he was struck and before he passed under the wheels of the engine, would tend to sustain the theory that he was walking on the track at the time, rather than that he was lying upon the same intoxicated. Under such evidence, it is clear that the court would not have

been justified in instructing the jury that the proof of contributory negligence on the part of the decedent was such that his administratrix could not recover. The fact that the deceased was at the time of his injury under the influence of liquor or intoxicated is evidence of contributory negligence to be considered by the jury, but it does not conclusively establish that defense unless it is proven to have been the proximate cause of the injury. Holmes v. Railroad Co., 6 Sawy. 290, 5 Fed. 523; Fitzgerald v. Town of Weston, 52 Wis. 354, 9 N. W. 13; Loewer v. Sedalia, 77 Mo. 431; Cramer v. Burlington, 42 Iowa, 315; Ward v. Railroad Co., 85 Wis. 601, 55 N. W. 771; Bradwell v. Railroad Co., 153 Pa. St. 105, 25 Atl. 623. The plaintiff in error contends that there was error in the instruction of the court to the jury concerning the evidence of contributory negligence. The bill of exceptions shows, however, that no exception was taken to that portion of the charge. The question so raised cannot therefore be considered here.

It is urged that the deceased and the employés of the defendant who were in charge of the engine were fellow servants, in a common employment, and that therefore there can be no recovery by the administratrix. It is said that Stapleton was moving his engine along the tracks of the terminal company in pursuance of an arrangement between that company and his employer, and that he and the deceased, who was a car accountant, were both engaged in an employment necessarily bringing them in contact with passing engines, and that they both had the immediate common object of moving, checking, and caring for the cars and engines of the defendant in the yards of the terminal company. It is true that Craft's duties were to check up the cars that came into the yard, whether they belonged to the Northern Pacific Railroad Company or to other companies, but, so far as the record indicates, he was in a distinct and separate employment from that of Stapleton, and he and Stapleton were in no sense under a common master, or subject to the same control. Stapleton's duty was solely to his employer, the Northern Pacific Railroad Company, while Craft, on the other hand, owed no duty to that company, but his duty was to his employer, the terminal company. In taking account of the cars of the Northern Pacific Company, he was not acting for that company, or in its service, but for his employer, and presumably for purposes connected with the business of his employer, by whose permission or contract the cars of the different lines came and went. The fact that three railroad lines in common used the tracks and yards of the terminal company, and the fact that the deceased, while in the regular discharge of his duties, was exposed to the risk of injury from their passing engines, does not affect his relation to those companies. In entering the service of the terminal company he assumed the ordinary risks of his employment, one of which was the risk of injury from his fellow servants; but the employés of the railroad companies who used the tracks were not his fellow servants, and he assumed no such risk as to them. If the relation between the terminal company and the Northern Pacific Railroad Company had been such that all operations of the servants of both, while in the yards of the

terminal company, were commanded by a single authority, there might be ground for the plaintiff's contention, but there is nothing in the record in this case to show that such was the fact. In Railroad Co. v. Armstrong, 49 Pa. St. 186, the plaintiff's intestate had been in the employment of one railroad company, and the injury was caused by the cars of another company, which had the right to run its trains over the road of the first company. It was held that the plaintiff was not precluded from recovering on the ground that his intestate was in the same general employment with the defend-ant's servants. In Philadelphia, W. & B. R. Co. v. State, 58 Md. 372, the deceased was an employé of one of three railway companies who used the defendant's track, under an agreement with the defendant company. The court said:

"Whatever effect this agreement had upon the parties to it, it could not have any upon strangers to it, nor alter nor change the relation of either of them toward third parties, nor have the effect of making those who were employed and paid wages by either of the contracting parties the employés of the other parties."

In Phillips v. Railroad Co., 64 Wis. 475, 25 N. W. 544, there was an agreement by which the Wisconsin Central ran its trains a short distance over the defendant's road, but on times, orders, etc., of the latter company. The deceased was employed by the Wisconsin Central, and was killed while on the defendant's road, by the negligence of defendant's servants. The court held that the employés of the two companies were not fellow servants, for the reason that the employer of the injured man had nothing to do with the selection of the negligent servants of the defendant, and had no power to dismiss them, and the deceased was not paid or employed by the defendant, but by a different and independent corporation. There are some cases which apparently hold a different doctrine, but it will be found that the decision in those cases was controlled by the fact that, by contract between the employer of the servant who was injured and the employer of the servant who was negligent, the control of the property which was jointly used was vested in one or the other of the two employers, and that thus a common control was established over all the employés of both. Thus, in Railroad Co. v. Clark, 2 Ill. App. 596, it was held that where a railroad company leases of another the right to use its track, the employés of both roads will be deemed fellow servants. But the decision was expressly based upon the stipulation of the lease which provided that the road should be used subject to the control, rules, and orders of the lessor company, and the court entertained the view that the lessor company became thereby the common master of the employés of both roads. The case of Johnson v. City of Boston, 118 Mass. 114, is relied upon by the appellant. That decision, however, also comes within the rule of the case last mentioned. The plaintiff was employed by a contractor, who had engaged a large number of men to drill and blast rock for the city of Boston, in constructing the sewers of that city. The city also, by its superintendent of sewers, employed other servants in the same work. Some of the latter caused the injury to the plaintiff for which he sued the city.

It was held that he could not recover, for the reason that, notwithstanding his separate engagement to work for his immediate employer, he was nevertheless in the service of the city, and had consented to the temporary transfer of his services to the control of the defendant's foreman, and was under the direct charge and management of that foreman, who also controlled the action of the employés by whose negligence he was hurt. Of similar import was the decision of the court in Corneilson v. Railway Co., 50 Minn. 23, 52 N. W. 224. The judgment will be affirmed, with costs to the defendant in error.