HORATIO N. SLATER *et al. against* JOHN W. MERSEREAU.

Defendant being a contractor engaged in the erection of a building, put on the roof without making any provision for carrying off the water that would necessarily fall on it in the event of a rain storm. A rain storm, such as was usual at that time of the year, took place, and the rain falling from the roof, uniting with that coming from the street, flooded the adjoining premises and injured a stock of goods there. *Held,* that defendant was liable for the damage to the goods.

APPEAL from a judgment of this court entered on the report of a referee to hear and determine.

The action was brought to recover damages for the alleged negligence of the defendant, by which the plaintiffs' premises were overflowed with water.

The facts, as found by the referee, were as follows: The plaintiffs were dry goods merchants, and occupied the basement of Nos. 115 and 117 Franklin street, in New York city. The adjoining premises were owned by Daniel Appleton & Co., who, on April 8th, 1868, made a contract with the defendant to erect a new building thereon. The defendant then made sub-contracts with Moore & Bryant to do the mason work, with certain other parties to do the plumbing work, &c., and reserved the carpenter's work for himself. After the roof of the building was on, and before it was entirely completed, a rain storm took place, and the plaintiffs' premises flooded and their stock of goods injured under the circumstances described in the opinion. The referee reported in favor of the plaintiffs.

Defendant appealed.

*Henderson & Fennell,* for appellant.

*F. H. Churchill,* for respondents.

DALY, Chief Justice.—I think the evidence justifies the conclusion at which the referee arrived. 1. That the injury arose from the water which came from the roof and the street

into the cellar. 2. That the flowing of the water from the roof into the cellar was owing to the defendant's negligence in completing the roof before the necessary connection was made to carry off the water from it to the sewer, without putting up some temporary structure to carry the water off; and 3. That it being impossible to distinguish in what proportion the water that came from the roof, and that which came from the street, contributed to produce the damage, the defendant was answerable as a joint tort-feasor.

The failure to make the connection between the leader and the sewer in time for the completion of the roof was attributable to the masons Moore & Bryant, for it was in evidence that one of the plumbers spoke to the foreman of the masons two weeks before it was done, and urged him to do it; that it might have been done in four days, and certainly in ten, and that the foreman said that he could not get at it until the dirt was taken out of the cellar. But the defendant's foreman was aware that the cutting was not done, for he was in every part of the building, and yet the defendant went on, completing the roof without making any provision for the carrying off of the water which, in the event of rain, would necessarily flow from it into the cellar. Thompson, an expert, engaged for thirty years in the erection of buildings, says that water should never be allowed to get into a building; that when there is any difficulty in forming a connection between the leader from the roof and the sewer, it was his practice " to put up a temporary second-hand leader to take the water down through the building to the place where it runs away;" and Badouine, a man of a good deal of experience in the erection of buildings, who, as owner or superintendent, has erected a number in this city for the past twenty years, said that water could be taken from the roof of a building by a temporary wooden leader running through the building to the front and throwing the water into the street, and that he saw no difficulty about having the leader in this case completed at the time the roof was completed. This was sufficient to show that it was through the defendant's negligence that the water from the roof flowed into the cellar, and as that, uniting with the water that flowed in from the street, caused the injury, the defendant is responsible; for those

whose united negligence is the direct cause of a single injury, are each answerable for the consequences, although they may have acted independently of each other (Shearman & Redfield on Negligence, 558, and the cases there cited).

There is nothing in the evidence to warrant the assumption in the defendant's points, that the rain storm which caused the damage, was of an unusual character. A rain gauge kept in the vicinity, showed that the fall did not exceed two inches, and in other parts of the city it was half an inch less. Four days after there was another rain storm, when the fall was much greater, in some parts of the city nearly four inches, and yet it produced no damage in the same premises, for the reason that the connection between the leader and the sewer was then completed, showing that if the connection had been made, or if there had been some temporary means to carry off the water on the night of the 20th, that the defendant would have had no share in producing the injury. It may be the water from the street would have flowed in upon that evening sufficiently to injure the plaintiffs' goods, even if the water from the roof had been carried off into the street. But that is a matter upon which we cannot speculate. The negligence of the plaintiff co-operated with the negligence of Moore & Bryant in producing the volume of water which filled the cellar and caused the injury, and both or either of them may be sued for the damage.

The measure of damages adopted by the referee appears to be justified by the evidence. He gave them as their damages the expense they had been put to in restoring the goods, which he found to be less than the difference between their market value in their sound and in their unsound condition. It is suggested in the plaintiffs' points that the referee adopted the computation made by the plaintiffs' counsel, and which was submitted to the other side. If there was any error in the computation, the amount may be reduced by a subsequent application to the general term; but so far as I can make out from the testimony of Scudder, it appears to be correct.

Robinson and Larremore, JJ., concurred.

Judgment affirmed.