## City Court.

*Trial Term—November,* 1886.

## JOHN MOONEY *against* THIRD AVENUE RAILROAD CO.

Joint and Several Acts of Negligence—Proximate and Remote Causes. Persons who co-operate in an act directly causing injury are jointly liable for its consequences, if they acted in concert in causing a single injury. But persons who act separately, each causing a separate injury, cannot be made liable, even though the injuries thus committed are all inflicted at one time, and precisely similar in character.

Where separate injuries are so committed, the proximate cause of both is liable for all the damages.

The measure of damages in an action by a husband for injuries to his wife are limited to loss of services and expenses which he personally incurs.

See note at end of case as to joint wrong-doers.

Trial before the court and a jury.

*W. L. Bruen,* for plaintiff.

*Lauterbach & Spingarn,* for defendant.

The facts appear in the charge to the jury, delivered by McADAM, Ch. J., who said :

GENTLEMEN : This is an action brought by John Mooney to recover damages for the services of his wife, which he claims to have lost in consequence of injuries received by her on the evening of May 5, 1885. The case is peculiar, and in some of its aspects remarkable, as showing the accidents to which pedestrians are exposed in great cities, and how from one misfortune others may follow in rapid

succession, before the unfortunate victim has had an opportunity of recovering sufficiently from the first to appreciate and avoid the dangers of the second.

On the evening in question the plaintiff's wife was crossing Third Avenue, near Thirty-sixth Street, traveling from the west to the east. In crossing, and while a little east of the tracks of the Third Avenue Railroad, she was knocked down by a cab belonging to Ryerson & Brown, and thrown upon the tracks of the railroad company, and while lying there was injured by the horses before one of the cars of the Third Avenue Railroad Company. Each of these acts was done by independent parties, neither acting in concert with the other. For such acts there is a remedy, of course; but the nature of it depends upon circumstances, in reference to which you are entitled to instructions, as clear as the nature of the complication will admit, and my understanding of the law will afford.

We have in law what are termed proximate and remote causes, and the policy of courts has been to hold the party who originates a wrong to all the consequences flowing from it. This rule is exemplified in the celebrated case of Scott v. Shepherd (3 *Wils.* 403; 2 *W. Bl.* 892), where the facts were that the defendant threw a lighted squib into a crowd of people, one after another of whom in self-protection threw it from him until it exploded near the plaintiff's eye, and blinded him. Here was but a single wrong—the original act of throwing the dangerous missile; and, though the plaintiff would not have been harmed by it but for the subsequent acts of others throwing it in his direction, yet as these were instinctive and innocent, it is the same as if a cracker had been flung, which had bounded and rebounded, again and again, before it struck the plaintiff's eye, and the injury was therefore held to be a natural and proximate result of the original act, and, the circumstance conjoined with it to produce the injury being perfectly natural, these circumstances might have

been anticipated. In the present case, the plaintiff would have had no right to throw herself down upon the tracks of the car company, and could not have recovered if she had done so voluntarily. She was thrown down, however, by the cab of Ryerson & Brown, so that her presence there was not unlawful, and the Third Avenue Company is liable in this action, if the driver of their car saw the plaintiff's wife in her perilous position, and could by the exercise of proper care have avoided running over or injuring her, and doing the damage which the horses attached to the car added to those injuries which she had previously received from the cab. To make myself better understood, I charge you that the presence of the plaintiff upon the track of the railroad company, under the circumstances stated, gave the driver of the car no legal license to run over the plaintiff's wife. On the contrary, the driver was bound to exercise reasonable care to avoid doing her any further injury.

In determining whether the driver was negligent or not, you must not overlook the fact that if the cab had not interfered with the plaintiff's wife, she would probably have passed on her way in safety, unharmed by the car. Mrs. Mooney evidently did not anticipate that the cab was going to knock her down, any more than the driver of the car was bound to anticipate it. She probably thought her position was safe enough, or she presumably would not have taken it. The car-driver is entitled to the benefit of the same presumption,—that is, that Mrs. Mooney considered herself safe where she was. In other words, the car-driver was no more bound to assume that Mrs. Mooney was in danger before the cab struck her and threw her down than Mrs. Mooney herself. The driver's conduct must be judged of in the light of the circumstances as they transpired. He was not bound to have a presentiment in advance that Mrs. Mooney was to be knocked down by the cab, unless he had an opportunity of seeing that such a result was inevitable, in which case,

he was bound to govern himself accordingly. If the driver of the car, when he observed the peril of Mrs. Mooney, acted as a prudent driver would have done under the circumstances, and in the position he was placed, he was not guilty of negligence.

The converse is also true. If the car-driver failed to exercise the care, or use the efforts which a prudent driver would have exercised under the circumstances, and in the position he was placed, the driver was guilty of negligence, and if that negligence resulted in injury to Mrs. Mooney, which has occasioned loss of services to her husband, the railroad company is liable for the loss it caused.

If you find that the car-driver was not guilty of negligence, you may find for the defendant without considering the question of damages, for that task becomes unnecessary. If you find that the injuries the plaintiff's wife received were the result of her own imprudence and want of care, the plaintiff cannot recover. If her negli-gence contributed in any way to the injury, the plaintiff cannot recover. But if she was entirely free from fault the plaintiff has a remedy against the person or persons who inflicted the injury for which he seeks compensation If the defendant's driver was free from fault, it will be your duty to find a verdict in favor of the defendant, leav-ing the plaintiff to pursue any remedy he may have against Ryerson & Brown, the owners of the cab which inflicted the first damage.

If you find, however, that the car-driver was guilty of negligence, and that the plaintiff's wife was free from fault, you will next assess the damages which the husband sustained in the loss of her services, present and prospective—you are not to allow for the personal injury Mrs. Mooney received, nor for the pain and suffering she endured, for she has another action for that in her own right in which such damages may be recovered.

This action is by the husband, and his damages are by

law confined exclusively to loss of services and expenses which he personally incurred.

You are not to allow for any damages Ryerson & Brown's cab did her, because they are not before the court, and the plaintiff may bring an independent action against them if he elects to do so. If they were before the court, and were found to be the proximate cause of the injury, the entire damages might have been collected from them, but their share of the liability must be determined when they are before the court, and after they have been heard in their defense. How you are to apportion these damages must in the nature of things be left largely to you, and to the exercise of your intelligence and good judgment. This instruction will be limited, however, by a reference to two adjudged cases which I charge you state the law correctly. The first is Marble v. Worcester (4 *Gray*, 395), in which it was substantially held, "It is certainly true that where two or more independent causes concur in producing an effect, and it cannot be determined which was the efficient and controlling cause, or whether, without the concurrence of both, the event would have happened at all, and a particular party is responsible for only the consequences of one of such causes, in such case a recovery cannot be had, because it cannot be judicially determined that the damage would have done without such concurrence." The next is Davis v. Garrett (6 *Bing.* 716), and is perhaps more applicable to Ryerson & Brown than to the defendants. It lays down this rule: "But it is equally true that no wrong-doer ought to be allowed to apportion or qualify his own wrong; and that, as a loss has actually happened whilst his own wrongful act was in force and operation, he ought not to be permitted to set up as a defense that there was a more immediate cause of the loss, if that cause was put in operation by his own wrongful act. To entitle such party to exemption he must show not only that the same loss might have

Mooney *v.* Third Avenue R. R. Co.

happened, but that it must have happened, if the act complained of had not been done."

. If, therefore, you find that Ryerson & Brown were the proximate cause of the injury, and you cannot apportion the damages done by the Car Co., you must find for the defendant, leaving the plaintiff to his remedy over against Ryerson & Brown the original wrong-doers, through whose negligence the various injuries are imputable as necessary sequences of their original wrong in knocking Mrs. Mooney down, and leaving her prostrate upon the railroad track, unprotected and uncared for.

Gentlemen, consider this case carefully and conscientiously. Do fair, even and exact justice according to law. Do not allow sympathy to swerve you, nor prejudice to influence your judgment. Do not deny justice because the plaintiff is poor or the defendant rich. Higher motives must influence you in the discharge of your sacred sworn duty to litigants when they enter the portals of a court of justice.

Let your verdict follow the evidence and the law, and let it record the honest, conscientious convictions of your soul, that these litigants may feel that the result, however unfortunate to either of them in a financial point of view, emanated from an honest determination to be true to your oaths as American jurymen.

The jury found for the defendants. No appeal was taken.

## Whether the Liability is Joint or Several.

Persons who co-operate in an act directly causing injury, are jointly liable for its consequences, if they acted in concert, or united in causing a single injury. Thus the proprietors of two vehicles, both of which are driven so carelessly as to injure a third person by their collision. are jointly liable for the damage done, although in no way connected in business together (*Sherman & Redf. Neg.* § 58). But persons who act separately, each causing a separate injury, cannot be made liable, even though the injuries thus committed are all inflicted at one time, and precisely similar in character (*Ib.*).

Where the owner of a lot fronting on a street with other persons

caused to be made an excavation in and under the sidewalk in front of the lot, and the plaintiff, having fallen into the excavation, was injured,—*Held*, that although the person making the excavation, and the city (under its charter), may be each liable to the plaintiff for the injury, yet they are not *jointly* liable; that their improper joinder in such action is a ground of demurrer on the part of either (Trowbridge v. Forepaugh, 14 *Minn.* 133).

Where two or more persons are operating a railroad, their liability to an employe for breach of their duty to furnish safe machinery for his use, is several as well as joint (Kain v. Smith, 80 *N. Y.* 458). Where the independent torts of two persons in neglecting to provide water-escapes caused an accumulation of water which flooded plaintiff's store,—*Held*, that either wrong-doer was liable for the whole damage, although both contributed thereto, since it was impossible to distinguish or separate the different shares of each in the injury to the plaintiff (citing 6 *Duer*, 382; 20 *N. Y.* 49). It is no defense for a person against whom negligence which caused damage is proved, to prove that without fault on his part the same damage would have resulted from the act of another (citing 38 *N. Y.* 260; Slater v. Mersereau, 64 *N. Y.* 138; affirming 5 *Daly*, 445).

Where a statute imposes on two municipalities the duty of erecting and maintaining a bridge over a boundary stream, each is liable for omission to properly guard both approaches to the bridge when it is undergoing repairs at the hands of a contractor with both, which renders it impassable, and one of such municipalities may be held liable for damages sustained upon the territory of the other for a failure to erect a proper barrier across the road forming the approach to that end of such bridge (Haxhurst v. Mayor, &c., 43 *Hun*, 588).

Unless the negligence of two defendants is joint or concurrent, each is liable for his own negligence only, although engaged in a common purpose.

Municipal corporations are generally not liable for the neglect of their officers, unless the law has imposed a duty on the corporation in the premises.

A public official is not liable for the negligence of his inferior, if the latter is also a public officer and not a private servant.

The like rule of exemption from liability for negligence of inferiors, may obtain, as to public agents, and public charitable institutions having no fund appropriated to the payment of such damages.

But in this case the court is unable to say, from the charter alone, or the other evidence in the case, that the Insurance Patrol of the City of Philadelphia belongs to either of the two latter classes; and,

Mooney v. Third Avenue R. R. Co.

therefore, *held* to be error in the court below to nonsuit the plaintiff (Boyd *v.* Insurance Patrol of Philadelphia; S. C., *Pa. Pitts. L. J.* November 10, 1886.)

### Negligence — Proximate and Remote Cause — Intervening Agency.

The following report of the case of South Side Passenger Railway Co. *v.* Trich (20 *Week'y Notes Pa.* 324) is instructive.

Error to the Common Pleas No. 2, of Allegheny County.

Case, by Edward M. Trich and Sarah W., his wife, in right of said wife, against the South Side Passenger Railway Company, to recover damages for an injury to Mrs. Trich, alleged to have been caused by the negligence of the company defendant.

On the trial, before before EWING, P. J., the following facts appeared: On April 5, 1882, Mrs. Trich hailed a bob-tailed car of the Third Avenue line, belonging to the company defendant, at the intersection of Third Avenue and Smithfield Street in Pittsburg. The conductor stopped the car and Mrs. Trich got upon the car-step. While still there, and before she could get into the car, the driver saw a runaway horse and buggy coming up Smithfield Street, and, in order to avoid them, whipped up his horses and started the car rapidly. Mrs. Trich was thrown off by the bouncing of the car, alighting on her feet, and at the same moment was struck by the runaway and injured. There was no dispute as to the fact that the sole injury was caused by contact with the runaway vehicle.

The defendant requested the court to charge, *inter alia*, as follows : —

"It being the undisputed evidence in the case that Mrs. Trich was not injured by falling off the defendant's car, but by being struck by a runaway horse, even if the driver of the car was guilty of negligence, such negligence was not the proximate cause of the injury, and the plaintiff cannot recover." *Answer.* Refused. " It is a question for the jury under the evidence and under the further instructions of the court." (First assignment of error.)

The court charged the jury, *inter alia*, as follows : " Then comes in another question on which the defendant's counsel have asked us to instruct you. They have asked us to say to you that, it being undisputed evidence in the case that Mrs. Trich was not injured by falling off the defendant's car, but by being struck by a runaway horse, even if the driver of the car was guilty of negligence, such negligence was not the proximate cause of the injury, and the plaintiffs cannot recover. This is refused. It is a question for the jury under the evidence and under the further instructions of the court.

We do not think that we can say precisely what the facts are in this case. On that point the rule of law is this : A party defendant is only liable for what are called the proximate results of his act; not for the remote consequences; not where some other independent matter intervenes that could not have been foreseen by the party guilty of the negligence. This matter has been discussed by counsel in your presence, and some illustrations given as to which I will venture to make some suggestions. The evidence seems to me to preponderate very largely in favor of the fact that the immediate force which caused the injury to this woman was the runaway horse. Whether it was the horse or the shafts struck her, nobody tells, and probably nobody knows. Now, assuming that the car stopped as the plaintiff says; that it started improperly, and that she was jolted off, where she says she was, by the negligent conduct of the driver—assuming all that to be true, if, before she could get away, a stone had been thrown from some building adjoining and struck her, when, if she had been on the corner or on the car, it would not have struck her, clearly the defendant company would not be liable. The proximate cause of the injury would be the stone falling on her; not her falling from the car. Her being there was a mere accidental thing, and the car company would not be responsible, because they would have no right to anticipate that the consequence of their neglect would be that Mrs. Trich would be struck by a stone from the adjoining building; it was not to be expected ; it would be too remote; and she could not recover. I give you that as an illustration, and the practical question for you in this case is (if you find, as I have little doubt you will find, in discussing this question, that the injury came from the force with which she was struck by the runaway horse) was the striking of a woman thrown off in this way, a result that they would have a right or ought to anticipate would be the result of negligence in throwing her off the car at that place and point ? I think the court should say that the driver was bound to take into consideration, at such a crossing, that vehicles would be passing and repassing, and that there is more or less danger of a person being struck by a vehicle before they could get out of the way, if thrown off in the middle of the street. But it is for the jury to say whether or not, under the circumstances in this case, if they find that the driver was guilty of negligence, it was a consequence to be fairly anticipated that she would be struck by a passing vehicle or a passing horse before she could get out of the way." (Second assignment of error.)

Verdict and judgment for plaintiffs. Defendant thereupon took

Mooney *v.* Third Avenue R. R. Co.

this writ, assigning for error, *inter alia*, the refusal of their point as above, and the charge of the court above cited.

*November* 11, 1887.    THE COURT.—There is no manner of question as to what was the actual and immediate cause of the injury inflicted upon Mrs. Trich. It was an entirely undisputed fact that she was struck and injured by a runaway horse and buggy. All the witnesses who saw the occurrence so testify. Thus Mr. McCully, the father of Mrs. Trich, who was present with her at the time, and was examined on her behalf, after describing her attempt to get on the car, and saying that she was bounced off, adds—"A moment or two afterwards, here comes a runaway horse and buggy down the street, and the shaft, I suppose it was, caught her under the arm and drag_ ged her to the street-crossing and she fell away." The only other witness examined for the plaintiffs as to the facts of the occurrence, M. M. Herrington, testified—"There is a banking building there on the corner, and I saw the lady fall—fall off—and when she fell, to the best of my knowledge, she kind of threw herself back this way, and there was a phaeton or buggy of some kind running—a horse running down the street with a buggy—and it struck her, and they picked her up and carried her into Mr. Johnson's drug-store." There was no contradiction of this testimony. But one other witness, Mrs. Vrailing, examined by the defendant, testified to the fact of the injury, and she also said it was done by the buggy striking the woman. The learned court below in the charge said : "The evidence seems to me to preponderate very largely in favor of the fact that the immediate force which caused the injury to this woman was the runaway horse."

This was an understatement of the testimony which might have led the jury to suppose that there was an open question, with a preponderance of evidence only, as to whether it was the runaway horse and buggy which inflicted the injury. The defendant had presented a point stating that it was the undisputed evidence that Mrs. Trich was injured by being struck by a runaway horse, so that the question was directly before the court. In view of that circumstance we think the court should have specifically so charged and not left it as an open question for the jury to determine with a mere expression of the opinion that the evidence preponderated in that direction.

Assuming then, as we do, that it was the undisputed evidence that the injury was inflicted by the runaway horse and buggy, the only remaining question is whether it was the duty of the court to declare whether this was the proximate cause of the injury. The point presented by the defendant asked for such an instruction, but the court refused it, saying it was a question for the jury under the

evidence. In this we think there was error. In the case of West Mahanoy v. Watson (112 *Pa. St.* 574), we reversed the court below for making just such an answer to just such a point, and upon a review of the facts of the case we held that they did not constitute an instance of proximate cause as against the defendant, and therefore decided that the defendant's point should have been affirmed, which took the case from the jury. Mr. Justice PAXSON, in delivering the opinion, said : " While it is undoubtedly true as a general proposition that the question of proximate cause is for the jury, yet it has been repeatedly held that where there are no disputed facts the court may determine it. It is sufficient to refer to Hoag v. Railroad Co. (85 *Pa. St.* 293). In that case this court, following Railroad v. Kerr (62 *Pa. St.* 353) and Railroad Co. v. Hope (80 *Id.* 373), laid down the rule as to proximate cause as follows : " In determining what is proximate cause the true rule is that the injury must be the natural and probable consequence of the negligence; such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrong-doer, as likely to flow from his act."

Applying this rule to the facts of the present case, can it be said that the injury of Mrs. Trich was the actual and probable consequence of the car-driver's negligence in urging his horses to a faster gait ? We think not. There was not a particle of evidence to show that runaway horses and vehicles were frequently, or indeed, ever seen upon Smithfield Street where this accident occurred. There was no evidence upon that subject. It was certainly not a natural consequence of a person being upon that street that he would be struck by a runaway horse. Nor is there the slightest reason for saying that it would be a probable consequence. The utmost that can be said would be that such a consequence might possibly happen. But things or results which are only possible cannot be spoken of as either probable or natural. For the latter are those things or events which are likely to happen, and which, for that reason, should be foreseen. Things which are possible may never happen, but those which are probable are those which do happen, and happen with such frequency or regularity as to become a matter of definite inference. To impose such a standard of care as requires, in the ordinary affairs of life, precaution on the part of individuals against all the possibilities which may occur, is establishing a degree of responsibility quite beyond any legal limitations which have yet been declared. We are of opinion that in the fact of the present case the direct and immediately producing cause of Mrs. Trich's injury was her being struck by a runaway horse and buggy over

which the defendant company had no sort of control and for which it is not responsible, and therefore we conclude that the proximate cause of the injury, in the legal sense, was the collision of the horse and buggy with the person of Mrs Trich, and not the negligence of the defendant.

The case of West Mahanoy v. Watson came again into this court, and is reported in 19 *Weekly Notes*, 441. The present chief justice, in delivering the opinion of the court, said : " These facts narrow the case down to the single question, was the upset at the ash-heap on the township road the immediate or direct cause of the loss of the horses ? As we have seen, the facts themselves answer this interrogatory in the negative, and necessarily determine the case in favor of the plaintiff in error. In the case of Hoag v. Lake Shore & Michigan Southern R. R. Co. (85 *Pa.* 293), Mr. Justice TRUNKEY, then president of the common pleas of Venango county, in his charge to the jury on the trial of the above-named case, said : ' The immediate and not the remote cause is to be considered. This maxim is not to be controlled by time or distance, but by the succession of events. The question is, did the cause alleged produce its effect without another cause intervening, or was it to operate through or by means of this intervening cause ? As the principle here stated was adopted by the affirmance of this court following Pennsylvania R. R. v. Kerr (62 *Pa.* 353), we may regard it as the settled law of this State."

In the facts of the present case we find a perfect illustration of this principle. Mrs. Trich herself testified that when she was " bounced " from the car she fell on her feet. Immediately after she was struck by the runaway horse and buggy, and from them received her injury. The jolting from the car simply landed her on her feet and inflicted no injury. But another agency intervened which was entirely independent of any act of the defendant, and that agency alone inflicted the injury in question. Following the doctrine of the last case cited we feel clearly obliged to hold that the plaintiff's injury was inflicted by the special intervening agency stated, and therefore the defendant is not liable. In all of the cases cited, as in several others not referred to this court finally determined them upon its own view of the facts without regard to the verdicts of the juries. The defendant's point should have been affirmed.

Judgment reversed.

Opinion by GREEN, J.

TRUNKEY and CLARK, JJ., absent.

### Proximate and Remote Cause, continued.

Where several proximate causes contribute to an accident, and each is an efficient cause, without the operation of which the acci-

dent would not have happened, it may be attributed to all or any of the causes, but it cannot be attributable to a cause, *unless, without its operation*, the accident would not have happened (Ring *v.* City, 77 *N. Y.* 83, 89, 90. S. P., Ehrgott *v.* Mayor, 96 *Id.* 283). Where the fact is that the damages claimed in an action were occasioned by one of two causes, for one of which the defendant is responsible, and for the other of which it is not responsible, the plaintiff must fail if his evidence does not show that the damage was produced by the former cause (Searles *v.* Manhattan, 101 *N. Y.* 662 ; Taylor *v.* City, 105 *Id.* 203 ; and see 49 *Hun*, 376, 403).

## Liability of Joint Wrong-doers—Negligence of Plaintiff's Carrier in such a case not imputable to him.

The supreme court of Pennsylvania, in Borough of Carlisle *v.* Brisbane (*Chicago Legal News*, March 5, 1887), reviewed the law indicated in the  ead-note, as laid down in Pennsylvania and New York, as follows.

CLARK, J.—The general rule of the law undoubtedly is, where one suffers an injury through the concurrent negligence of two or more persons, they are jointly liable, and may be proceeded against for damages sustained, either jointly or severally, at the option of the party injured, unless the latter, by his own negligence, has contributed to the injury. in which case the law will not afford him any remedy whatever against any or all of the persons whose wrong, in concurrence with his own, caused the injury. The rule is, however not without its exceptions. Where goods in the hands of a common carrier are injured by the negligent act of a third party, to which the negligence of the carrier contributes, and an action is brought by the owner against the third party, the carrier's contributory negligence is a good defense (Vanderplank *v* Miller, *Mood. & M.* 169 ; Simpson *v.* Hand, 6 *Whart.* 311). So also where a passenger is personally injured by the joint negligence of his carrier and another party, his remedy is against the common carrier alone, The latter question was first raised in this court, and was very fully discussed, in the case of Lockhart *v.* Lichtenthaler, 46 *Pa. St.* 151. The decision in that case was grounded upon the doctrine of the English cases, Bridge *v.* Grand Junction Ry. Co., 3 *Mees. & W.* 247 (1838, in the court of exchequer) ; Thorogood *v.* Bryan, 65 *E. C. L.* 114, and Cattlin *v.* Hills, *Id.* 123 (in the common bench, 1849). These cases have since been followed and approved in the exchequer by Armstrong *v.* Lancashire & Y. Ry. Co., 44 *L. J. Exch.* 89. The principle upon which these English cases appear to have been determined is that the passenger is so far identified with the carriage in which he

Mooney v. Third Avenue R. R. Co.

is traveling that want of care on the part of the driver will be a defense of the owner of the other carriage that directly caused the injury.

Our own case of Lockhart v. Lichtenthaler, *supra*, was followed by Philadelphia & R. R. Co. v. Boyer, 97 *Pa. St.* 91, an action against the railroad company to recover damages for the death of a person caused by a collision of the defendant's train with a street-car in which the deceased was a passenger. It was held, that in order to recover, the plaintiffs must show not only that the death resulted directly from the defendant's negligence, but that the negligence of the carrier company did not contribute to the result. Therefore, although there is certainly a wide difference of opinion between the courts of this and other States on the subject, it seems to be well settled as the law of Pennsylvania that the remedy of a passenger injured by the joint negligence of his carrier and another is against the common carrier only.

Cornman, however, was not a common carrier. He was the owner of the horse and sleigh, and was the driver. Brisbane was a friend of Cornman's, visiting Carlisle, and occupied a seat in the sleigh by his invitation. The accident occurred while returning from a visit to the poor-house. Nor was Cornman the servant of Brisbane. As the driver, he was neither under Brisbane's direction nor control, nor was Brisbane under his control. Brisbane had simply accepted the friendly offer of a seat in Cornman's sleigh. He had a right to expect from Cornman ordinary skill and care in the management of the conveyance, and precisely the same degree of care from the municipality of the borough of Carlisle in the condition and repair of the streets over which they might pass. There is no evidence whatever that Brisbane knew that Cornman was a reckless or unskillful driver, or that he saw, or by the exercise of reasonable care at the time could see, or ought to have seen, the dangerous condition of the street. Indeed, the jury has found that he was not personally aware of either, and no question can arise involving this view of the case.

It is said, however, that although there is no evidence of any actual negligence on the part of Brisbane, upon the principle of Lockhart v. Lichtenthaler the negligence of Cornman is to be imputed to him.

The rationale of the rule in Thorogood v. Bryan, is said by Colton, J., to be the identity of the passenger with his own vehicle ; but in Lockhart v. Lichtenthaler this reason is rejected, and we think the foundation of the principle is expressed by Mr. Justice Thompson with much more care and accuracy, as follows : "I would say the reason for it is that it better accords with the policy of the

law to hold the carrier alone responsible in such circumstances as an incentive to care and diligence. As the law fixes responsibility upon a different principle in the case of the carrier, as already noticed, from that of a party who does not stand in that relation to the party injured, the very philosophy of the requirement of greater care is that he shall be answerable for omitting any duty which the law has defined as his rule and guide, and will not permit him to escape by imputing negligence of a less culpable character to others, but sufficient to render them liable for the consequences of his own. It would be altogether more just to hold liable him who has engaged to observe the highest degree of diligence and care, and has been compensated for so doing, rather than him upon whom no such obligation rests, and who, not being compensated for the observance of such a degree of care, acts only on the duty to observe ordinary care, and may not be aware even of the presence of a party who might be injured."

When the reason of a rule of law ceases, the rule itself ceases. The law fixes the responsibility of the persons or parties involved in this transaction upon precisely the same basis. There is certainly no policy of law which requires that the driver of a private carriage or sleigh, who, actuated by the motives of kindness alone, and without compensation, may undertake to convey a friend through the streets of a city or town, shall be held to a higher standard of care toward that friend than the city or town through whose streets they pass. Both Cornman and the municipality of Carlisle borough were bound to Brisbane for the exercise of ordinary care and diligence only. If Cornman had been a common carrier, he would have been a carrier for compensation, and would have been obliged to observe the highest degree of diligence and care. The policy of the law in such a case, it is said, would not permit him to escape by interposing the negligence of others of a less culpable character. The doctrine declared in Lockhart *v.* Lichtenthaler and Philadelphia & R. R. Co. *v.* Boyer is not applicable to this case, and there is no sound principle of law which will preclude the plaintiff from seeking redress from both or either of the persons through whose negligence he was injured. Brisbane was answerable for his own negligence alone. The negligence of Cornman under the circumstances cannot be imputed to him so as to bar his recovery in this case.

The case at bar is in every respect similar to the case of Robinson *v.* New York Cent. and H. R. R. Co., 66 *N. Y.* 11, where a female accepted an invitation to ride in a buggy with a person who was entirely competent to manage a horse, and it was held that if the defendant company was negligent, and the plaintiff free from negli-

gence herself, she might recover from the company, although the driver of the buggy might have been guilty of negligence which contributed to the injury. This case was followed by Dyer v. Erie R., 71 *N. Y.* 228. Mr. Justice MILLER, delivering the opinion of the court, says : " It is insisted that the court erred in charging the jury that the negligence of Stimpson was no bar to the action, and that the negligence of the driver would not prevent a recovery. The solution of the question raised must depend on the position which Stimpson occupied toward the plaintiff. The plaintiff rode with Stimpson, at his invitation, gratuitously, in Stimpson's wagon. The latter, driving the team, exercised entire control over it, and was traveling entirely on business of his own. Stimpson was not hired by the plaintiff, or in his employ, or in any sense his agent, nor had the plaintiff any control or direction of the team, or its management, or over Stimpson himself. There is no pretense but that Stimpson was entirely competent to take charge of the team himself, nor that he did not possess the requisite skill to manage and control the same. It is difficult to see upon what principle the negligence of Stimpson can affect the plaintiff, or be imputed to him."

These causes in New York were afterward followed by Masterson v. New York Cent. & H. R. R. Co., 84 *N. Y.* 247, which is to the same effect. It is true that the authority of these cases may be supposed to be somewhat impaired in Pennsylvania, by the fact that in New York the rule of Thorogood v. Bryan has been repudiated. (Chapman v. New Haven R. Co., 19 *N. Y.* 341); but as we hold the rule of policy only to apply to the case of a common carrier, there is no reason to discredit the authority of that court in cases where this rule of policy does not apply.

In this view it is not important what Cornman may have previously known as to the condition of the road ; and as it is shown that Brisbane never had any knowledge of it the case was to be considered by the jury, so far as Brisbane is concerned, just as if both were passing over the road for the first time. A stranger, in the twilight, or when snow was on the ground, as a matter of fact, might certainly assume that the center of a public road or street within the corporate limits of a populous town, over which hundreds of wagons passed every day, especially if no other route is plainly designated, was in a passable condition.

In the consideration of a question of negligence on the part of a stranger, certainly under such circumstances, it was proper to show that he took the center, and not the side, of the opened street. There may be cases where the conformation of the ground itself would clearly indicate that the center of a public road is not the traveled

route, and in such case this circumstance may be sufficient to give notice ; but in all ordinary cases the center of a public street, passing between the open lots of a populous town, in the usual course of travel, and in the night time, or when the route is obscured by snow, may be taken as the traveled route. If the municipal officers caused an obstruction to be placed on part of the highway, it was their duty to give some appropriate warning of the fact.

Nor can we see any valid objection to the evidence showing where the actual traveled route was before the street was macadamized. If there was nothing to indicate to a stranger that the route for travel was at the side of the road, we have said he might assume the route to be in the center. How, then, could it harm the defendant to show that the route had previously been in the center, although the plaintiff did not know the fact ? The evidence was clearly competent, however. Its tendency was to show that the only obstruction of the street was that which the officers of the municipality had themselves negligently placed there, and that there was nothing in the natural conformation of the ground to prevent the use of the central part of the road at this point, or to warn the plaintiff that the traveled route was not in the center, but along the side of the street. It is an undoubted, and, indeed, an undisputed fact, that the center of the street had been the usual course of travel, and we think it was certainly competent to show it. The learned court very plainly instructed the jury that if the way provided was safe, convenient, and so well marked that no man of ordinary prudence could mistake it, it was not necessary that it should have been along the middle of the street, and that in providing such a way at the side of the street they did their whole duty to the public, unless on the central part, where it had previously been used as the highway, they placed a dangerous obstruction, without giving any warning of the fact.

The principle upon which this evidence was admitted is, perhaps, inaccurately stated ; but, as the proof was properly received, we can not reverse upon the ground that proper reasons were not assigned for its admission.

The judgment is affirmed.

### Contributory Negligence of Driver of vehicle not chargeable to Innocent Passenger.

Beside the cases referred to in the previous decision attention is called to the following recent decision by the Maryland court of appeals.

Mooney *v.* Third Avenue R. R. Co.

The contributory negligence of a carrier, or of the driver of a public or private vehicle, not owned nor controlled by the passenger, and who is himself without fault, will not constitute a bar to the right of the passenger to recover for injuries received (Philadelphia, Wilmington & Baltimore R. R. Co., *v.* Hogeland).

## Privity in Negligence.

The decision of the supreme court of Ohio in Harriman *v.* Pittsburgh, C., &c. R. Co. (March 22, 1887 ; 12 *Northeastern Rep.* 451), turns on an interesting question of the law of privity in negligence analagous to the famous squib case. In this case, a train of cars, passing over some signal torpedoes, left one unexploded, which was picked up by a boy nine years old, at a point on the track which he and other children, in common with the general public, had long been accustomed to use as a crossing, with the knowledge and without the disapproval of the company. He carried it into a crowd of boys near by, and. not knowing what it was, attempted to open it. It exploded and injured the plaintiff, a boy ten years of age. *Held*, that the act of the boy who picked up the torpedo was only a contributory condition, which the company's servants should have anticipated as a probable consequence of their negligence in leaving the torpedo where they did, and that that negligence was the direct cause of the injury suffered by the plaintiff.

The fact that signal torpedoes, negligently placed upon a track by train men, who were authorized to use them in the management of the train, were put there when there was no necessity for doing so, and contrary to the rules of the company, does not exempt the company from liability to one injured, without any contributing fault, by such improper and negligent use of the torpedoes.

The court says, on the question whether the negligence of the defendant's servants was the proximate cause of the injury : " The claim is that the casual connection between the injury and the negligent act is broken by the intervention of the boy Brown, and that his wrongful or careless act was the immediate cause of the injury to plaintiff. This does not seem to be much insisted upon. And, indeed, since the leading case of Lynch *v.* Nurdin (1 *Q. B.* 29), there is an almost unbroken line of authorities to the effect that such intervening cause cannot affect the liability of the negligent party. This will be seen from a brief reference to some of the decided cases. In Lynch *v.* Nurdin (*supra*), the defendant's servant left his cart and horse half an hour in the open street, at the door of the house in which the servant remained during that period. The plaintiff, a

child between six and seven years old, and several other children came up, and began to play with the horse, and climb into the cart and out of it. While the plaintiff was getting down from it, another boy made the horse move, in consequence of which the plaintiff fell, and the cart passed over his leg, breaking it. The plaintiff had a verdict. Lord DENMAN, Ch. J., in sustaining the verdict, says : ' It is urged that the mischief was not produced by the mere negligence of the servant, but, at most, by that negligence in combination with two other active causes—the advance of the horse in consequence of his being excited by the other boy, and the plaintiff's improper conduct in mounting the cart, and so committing a trespass on the defendant's chattel. On the former of these two causes no great stress was laid, and I do not apprehend that it can be necessary to dwell upon it at any length ; for, if I am guilty of negligence in leaving anything dangerous in a place where I knew it to be extremely probable that some other person will unjustifiably set it in motion to the injury of a third person, and if that injury should be so brought about, I presume that the sufferer might have redress by action against both or either of the two, but unquestionably against the first.' And this case also decides that the defendant was liable, although his negligence was omission, and not commission, consisting merely in leaving the horse and cart unattended, and although the plaintiff, when injured, was a trespasser. Speaking on these subjects the court says : 'If large parties of young children might reasonably be expected to resort to the spot, it would be hard to say that a case of gross negligence was not fully established ;' and, again : 'Supposing the fact to be ascertained that the plaintiff merely indulged the natural instincts of a child in amusing himself with the empty cart, and deserted horse, though a trespasser, the defendant cannot be permitted to avail himself of that fact.' . . . . Lynch v. Nurdin has been generally followed in this country. We deem it unnecessary, however, to refer to any of the American cases except Pastene v. Adams (49 Cal. 87), and Lane v. Atlantic Works (111 Mass. 136)."

In the same case, the court review at some length the legal effect of the circumstance that the boy was technically a trespasser perhaps upon the premises, and claim that the company owed no duty such an one. The court say, conceding the general rule, yet "it is apparent that there may be a substantial difference between absolving the owner from the active duty of providing against the danger of accident to a trespasser upon his premises, or one who enters the same as a mere licensee, and giving him the same immunity when he knowingly places a highly explosive and dangerous instrument or

Mooney v. Third Avenue R. R. Co.

agent in the way that he knows the licensee—a child of tender years —is habitually accustomed to go, and where an ordinarily prudent person would reasonably expect him to go, and be thereby injured. An owner may, without protest or objection, permit his premises to be used by the public so long, in the same condition, that his acquiescence in the continuation of such use, until some warning or notice on his part, might reasonably be expected ; and if, under such circumstances, and with knowledge of the same, he should place or leave some some new dangerous structure or instrument in the way so used, and from which he might reasonably apprehend danger or injury to those accustomed to such use, can he claim exoneration from liability in case such injury shall occur, on the ground that the law imposed no duty on him to keep his premises in a safe and suitable condition for trespassers and licensees who enter by permission only ? This is the practical question here presented, and the answer thereto, as well as the reasons for the same, will appear from an examination of some of the cases referred to by counsel, and some not cited by them."

After reviewing the cases of Kelley v. Columbus, 41 *Ohio St.* 263 ; Pittsburgh, Ft. W. & C. R. Co. v. Bingham, 29 *Id.* 364 ; Carter v. Columbia & G. R. Co., 19 *S. C.* 20 ; Bellefontaine & I. R. Co. v. Snyder, 18 *Ohio St.* 399 ; Lynch v. Nurdin, 1 *Q. B.* 29 ; Barry v. New York Cent. & H. R. Co., 92 *N. Y.* 289 ; Davis v. Chicago & N. W. R. Co., 58 *Wis.* 646 ; 17 *N. W. Rep.* 406 ; Bransom v. Labrot, 81 *Ky.* 638 ; Powers v. Harlow, 53 *Mich.* 507 ; 19 *N. W. Rep.* 257 ; Keefe v. Milwaukee & St. P. R. Co., 21 *Minn.* 207 ; Nagel v. Missouri Pac. R. Co., 75 *Mo.* 653 ; Sioux City & P. R. Co. v. Stout, 17 *Wall.* 657 ; Graves v. Thomas, 95 *Ind.* 361 ; Campbell v. Boyd, 88 *N. C.* 129 ; · Corby v. Hill, 4 *C. B.* (*N. S.*) 556, the court adds :

"In the late case of Heaven v. Pender (11 *Q. B. Div.* 503) it is said that a more accurate and satisfactory ground of recovery, embracing all cases of implied invitation, is to be found in the proposition that whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary prudence would recognize that, if he did not use ordinary care and skill in his own conduct with regard to these circumstances, he might cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger. However this may be, the phrase 'implied invitation,' in its real value and significance as derived from its application in the adjudged . cases, imports knowledge by the defendant of the probable use by the plaintiff of the defendant's property, so situated and conditioned as to be open to and likely to be subjected to, such use ; and it may

Mooney v. Third Avenue R. R. Co.

be concluded that, while mere permission is not invitation, it may be implied from acquiescence by the owner in the accustomed use of his property by the public, so long in the same condition that it might reasonably be expected such use would be allowed by him to continue ; or when he knowingly so imposes and leaves it to the use of children, without objection, that they, following their natural impulses, would be likely to go upon it ; and in either case, it is his duty to use such care, commensurate with the danger arising from such use, as an ordinary prudent person would under the circumstances. Hence, where a railroad company has for a long time permitted the public, including children, to travel and pass habitually over its road at a given point, without objection or hindrance, it should, in the operation of its trains and management of its road, so long as it acquiesces in such use, be held to anticipate the continuance thereof; and is bound to exercise care accordingly, having due regard to such probable use, and proportioned to the probable danger to persons so using its road : and it is negligence for the servants of such company to knowingly interpose any new danger without reasonable precaution against injury therefrom. It is, therefore, unimportant whether the defendant's liability, so far as this question of negligence is concerned, be placed upon the ground of implied invitation, or be referred to that other—and, as is said, more satisfactory and accurate—statement of the rule announced in Heaven v. Pender, supra. Tested by either, the defendant, knowing of the probable use of its roadway by children, from the previous habitual use thereof by the public, long acquiesced in by the defendant, ought reasonably to have anticipated such use by the plaintiff and other children ; and its servants in placing and leaving the unexploded torpedo, an innocent-looking, but highly dangerous and destructive article, where they might reasonably anticipate plaintiff and other children would be likely to go and handle it and be injured, thus placing a new and hidden danger in their way, without notice or warning, failed to use such care as a person of ordinary prudence would and ought under the circumstances (N. Y. Daily Register).